Argued October 6; affirmed November 21, 1933

# MONNER v. STARKER

(26 P. (2d) 1097)

*Robin D. Day* and *Brazier C. Small,* both of Salem, for appellant.

*F. S. Senn,* of Portland (Senn & Recken, of Portland, and Page & Page, of Salem, on the brief), for respondent.

BEAN, J. The automobile involved was owned and driven by the defendant Starker. The decedent, Frances Monner, was riding with Starker in the front seat of the automobile, a Chevrolet roadster, as his guest. In the back or rumble seat Frances Monner's sister, Agnes Monner, was riding with a young man by the name of Paul Boynton. Defendant Starker, a young man about 21 years of age, residing about three miles east of Brooks, Marion county, Oregon, had been keeping company with Frances Monner, about the age of 20 years, for about three years, and she often rode with him in an automobile. On the evening of the accident these two young men went for a ride of about

25 miles with the two sisters, and after going to some eating houses were returning on Commercial street at about 11:45 p. m. when the accident happened.

The testimony tended to show that South Commercial street in the city of Salem is a hard surface street with concrete curbings on either side and is a part of the Pacific highway. While the Starker car was proceeding in a northerly direction on South Commercial street, it was being driven by the defendant, as he states, at the rate of about 35 miles per hour. There was a car proceeding in front of defendant's car and another coming from the north and defendant did not desire to pass the car in front of him until the other car coming in an opposite direction had passed. Therefore, he applied his brakes and the roadster skidded approximately in a straight line diagonally across the east half of Commercial street, 147 feet from a point opposite the south curb line of Wilson street, if extended through Commercial street, to a point at and striking the east curb of South Commercial street, gouging out a considerable portion of the concrete curbing, then skidding and rolling in a northerly direction to the west side of Commercial street a further distance of 108 feet, finally coming to a rest upside down and against a car driven by one Pell Hannon, near the west side of Commercial street. The occupants of defendant's car were thrown about and injured. The head and body of Frances Monner, deceased, was badly mangled and crushed, which resulted in her death at the scene of the accident. The defendant also received severe injuries, among which was a fractured skull.

The trial in the circuit court was had before Hon. L. G. Lewelling in Department No. 1, for the reason that an affidavit of prejudice had been filed disqualify-

ing the Hon. L. H. McMahan. After the trial was completed and the jury instructed, Judge Lewelling announced to counsel about 5:15 p. m. that it was necessary for him to return to Albany on account of sickness in his family, and that he had made arrangements with Judge McMahan to receive the verdict. Counsel for both plaintiff and defendant stipulated that this might be done. Judge Lewelling returned to Albany. The jury, after deliberating several hours, returned and requested further instructions. The clerk assembled Hon. L. H. McMahan and counsel for the respective parties. One juror asked that the instructions be read over; another juror stated that he believed the verdict hinged on whether "this is gross negligence". Judge McMahan then read defendant's requested instruction No. 4 and plaintiff's requested instruction No. 2. Another juror suggested: "I don't think it is just the meaning of the word 'gross negligence' that we want to know about; I think it is whether we would have to consider it gross negligence or nothing." Another juror said: "And must it be gross negligence beyond a reasonable doubt, or beyond a doubt?" Judge McMahan answered, "No, by a preponderance of the evidence, reasonable doubt applies to a criminal case. I can't instruct you on this very well because I didn't try the case—any further than that." Judge McMahan retired with counsel to chambers and after consultation and returning to the court, on stipulation of counsel, plaintiff's instruction No. 1, as given by Judge Lewelling, was read to the jury by the reporter as follows:

"You are instructed that it is the law of this state that no person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or

loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator or caused by his gross negligence or intoxication or his reckless disregard of the rights of others. That is the statute under which this action is brought, known as the guest statute of the state of Oregon. In this case, intoxication is not alleged as grounds for recovery on behalf of plaintiff, and if plaintiff recover it must be on account of the gross negligence of defendant or his operation of said car in disregard of the rights of others—as set forth in the statute, it is 'reckless disregard of the rights of others'."

The jury was sent back for further deliberation, but was not asked if any further instructions were desired.

■■ The first assignment is as follows:

"The court erred in instructing the jury that it was necessary in this case that the plaintiff establish that the defendant was guilty of gross negligence, thereby eliminating from the jury's consideration the charge in the complaint that defendant Starker had operated his automobile in reckless disregard of the rights of others."

The instruction of the court upon which this error is predicated reads as follows:

"The evidence in this case discloses that Frances Monner was the guest of the defendant, J. A. Starker, while riding in his car. In other words, the relationship was such as we usually denote in the law as 'host' and 'guest'. Under this relationship before a host, who is the driver of the car, can be held in damages, the evidence must satisfy you by preponderance thereof that the host has been guilty of gross negligence, or that he operated his automobile in reckless disregard of the rights of his guest. In the ordinary case of negligence, where an automobile collides with a pedestrian or where two automobiles collide at an intersection of a highway and a party is injured, damages may

be awarded when it is shown that the driver of the automobile which caused the injury was operating the same carelessly or negligently. It is not necessary in such a case to establish gross negligence, but in this kind of a case, where the relationship of host and guest exists, the law requires the party who seeks damages to go further and establish gross negligence by preponderance of the evidence.''

It appears from a reading of the instruction of the court that that part of the instruction reading ''or that he operated his automobile in reckless disregard of the rights of his guest'' is omitted from consideration in the assignment of error. In the latter part of the instruction the court conveys the idea to the jury as to what is meant by ''gross negligence'' and sought to differentiate gross negligence from ordinary negligence. The instruction was proper and appropriate. It gave the jury some idea as to the meaning of ''gross negligence''. It was not necessary in the latter part of the instruction, to show the difference between gross negligence and ordinary negligence, for the court to repeat that part of the charge, saying it should be gross negligence ''or that he operated his automobile in reckless disregard of the rights of his guest''. The instruction must be considered as a whole. Giving it such consideration no error was committed. *McNab v. O'Flynn,* 127 Or. 490 (272 P. 670); *Bank of California v. Portland H. & W. Co.,* 131 Or. 123 (282 P. 99); *Mathews v. City of La Grande,* 136 Or. 426 (299 P. 999).

The criticism of counsel for plaintiff that the instruction limited the right of recovery to proof of gross negligence is not supported by a fair construction of the charge. It does not have that effect. The meaning is simply that it is not enough to prove ordinary

negligence, but gross negligence must be established, or that defendant operated his automobile in reckless disregard of the rights of his guest, meaning that if the plaintiff can recover on the ground of gross negligence it must prove something additional to ordinary negligence. The charge of the court must be considered as a whole. All of the instructions given by the court clearly delineated to the jury that the plaintiff could recover if he established any one or more of the allegations of gross negligence or the allegation relating to reckless disregard of the rights of others. The plaintiff was not prejudiced by the instruction. There was no error in that regard.

The learned trial court, in its charge to the jury in the first instruction, read the allegations of the complaint and defined the issues to the jury. The court informed the jury that the plaintiff claimed:

"That the defendant was grossly careless, negligent, wanton and wilfully reckless in the operation of his automobile and he drove and operated the same in a wanton, reckless and wilful disregard of the rights of others and particularly of Frances Monner and other parties then riding in said automobile, * * *."

And again the court stated that the plaintiff alleged in the complaint "That said defendant carelessly, negligently and with wilful recklessness and wanton disregard for the rights, lives and safety of others, drove said car at an excessively high rate of speed." And on three other occasions the court referred to the allegations of gross negligence, carelessness, recklessness and his reckless disregard of the rights of others. The court informed the jury that plaintiff, in order to recover, must show that the defendant was grossly negligent or was guilty of driving his car in a reckless

disregard of the rights of others, by the use of the following language:

"Before the plaintiff estate is entitled to a verdict, you must be satisfied by a preponderance of the evidence that J. A. Starker, the defendant, was guilty of driving his car in reckless disregard of the rights of Frances Monner."

In *Bank of California v. Portland H. & W. Co.*, supra, this court said:

"Instructions are to be read together and taken as a whole, and where the court gave a correct exposition of the law the judgment will not be reversed because some paragraph, or part of a paragraph considered alone, may be subject to criticism." Citing numerous cases.

In the present case the jury was plainly instructed by the court that it was not necessary for plaintiff to prove in this case that the defendant was guilty of negligence or acted in reckless disregard of the rights of others in all of the particulars alleged in the complaint. Should the jury be satisfied by a preponderance of the evidence that the defendant was guilty of gross negligence or that he acted with reckless disregard of the rights of others in one or more of the material allegations in the complaint and that such gross negligence or reckless disregard of the rights of others, if any, was the proximate cause of the injuries sustained by Frances Monner, which caused her death, then they should find for the plaintiff. The court also instructed the jury that in determining whether the defendant drove the car in a grossly negligent manner "or in reckless disregard to the rights of others at the time of the accident, you have a right to consider the length of the skid marks made by the Starker car at the time and place of the accident".

■ The second assignment of error is predicated upon the giving of the following instruction:

"By gross negligence is meant great negligence. The word gross means great or extreme. Gross negligence must include an element of carelessness so great that the jury can say that there was not only an absence of the due care that should have been exercised, but also a degree of negligence materially greater than that which would constitute ordinary negligence. Gross negligence means an absence of any care on the part of the person and it is the duty of the plaintiff, before he can recover damages in this case, to satisfy you by a preponderance of the evidence that the personal rights of the deceased, Frances Monner, were recklessly disregarded by failure of the defendant to act so as to avoid such injuries, evincing an utter disregard of the consequences by which such injuries were caused.

"Gross negligence contemplates a disregard of the safety of others greater than in the case of ordinary negligence. Gross negligence does not require that the injury be intentional, but it does require that the negligence be intentional if the person knowingly and wilfully fails to perform a duty owing to other persons and thereby causes injury."

The objection is directed to the part of the instruction reading: "Gross negligence means an absence of any care on the part of the person." The definition was taken practically verbatim from 20 R. C. L. 23, §17, and was approved by this court in the case of *Gill v. Selling,* 125 Or. 587 (267 P. 812, 58 A. L. R. 1556). In the case of *Storla v. S. P. & S. Trans. Co.,* 136 Or. 315, 326 (297 P. 367, 298 P. 1065), Mr. Justice ROSSMAN, in considering a similar question, after a thorough discussion of the authorities pertaining to the definition of gross negligence, concluded as follows:

"But in the interpretation of a charge a hypercritical construction should be avoided. The jurors

ordinarily are not lexicographers, and in grasping the meaning of any term, employed in an instruction, they are guided by the entire context. Hence an appellate court, reviewing a charge, endeavors to ascertain the meaning which the trial court and the jury, in the exercise of common sense, employed: Randall's Instructions to Juries, § 530. Moreover, in determining whether instructions are misleading or erroneous, their language will be construed with reference to the pleadings and the evidence.''

In the present case the complaint does not charge that defendant Starker operated his car without exercising any care whatever, but alleges:

''That said defendant carelessly, negligently and with wilful recklessness and wanton disregard for the rights, lives and safety of others, drove said car at an excessively high rate of speed upon said South Commercial Street when at said time the defendant knew that he could not drive said car at such high rate of speed without endangering the lives of those riding with him and the lives of others who might be on or near said Commercial Street on which traffic, both vehicular and pedestrian, was then heavy.''

In other allegations the plaintiff charged gross negligence, carelessness, recklessness, wantonness and wilfulness, and his reckless disregard of the rights of others.

As stated in the Storla case, we do not commend such an instruction. Nevertheless it was not there considered an error. The charge above quoted informed the jury that the word ''gross'' means ''great or extreme'' and gross negligence must include an element of carelessness so great that the jury can say that there was not only absence of due care that should have been exercised, but also a degree of negligence materially greater than that which would constitute ordi-

nary negligence. This discussion in the first part of the charge correctly informed the jury in regard to gross negligence. There were several other definitions of gross negligence given. After the words "absence of any care" in the same sentence we find the following language:

"and it is the duty of the plaintiff, before he can recover damages in this case, to satisfy you by a preponderance of the evidence that the personal rights of the deceased, Frances Monner, were recklessly disregarded by failure of the defendant to act so as to avoid such injuries, evincing an utter disregard of the consequences by which such injuries were caused."

And in the case of *Rauch v. Stecklein,* 142 Or. 286 (20 P. (2d) 387), Mr. Justice ROSSMAN, after reviewing authorities, defined gross negligence in the following language:

"Thus, gross negligence is conduct which indicates an indifference to the probable consequences of the act. A motor-host who drives in a manner which indicates that he has no concern for consequences and an indifference to the rights of others is said to be guilty of gross negligence. The injury which he inflicts is not entirely inadvertent. His mental qualities, therefore, differ from those of another who is guilty of only ordinary negligence. The condition of mind of the driver who plunges on ahead, grossly negligent of the rights of others, may not be such that we can say that his tortious acts are wilful or wanton, but his mind is at least indifferent to the rights of others or displays those rash qualities exhibited by the foolhardy."

This definition was approved and quoted in the case of *Younger v. Gallagher,* ante page 63 (26 P. (2d) 783). See also *Hartley v. Berg,* ante page 44 (25 P. (2d) 932) ; *Smith v. Laflar* 143 Or. 65 (20 P. (2d) 391).

While, according to our late decisions on gross negligence, one definition was not in entire harmony therewith, we do not think that the jury was misled or that there was any reversible error in the charge of the court. We have taken the precaution to read all of the other instructions of the court which are very clear, plain and understandable. While one of the jurors did not understand whether the plaintiff had to prove the allegations of the complaint beyond a reasonable doubt or not, he was informed by the court that the allegations of the complaint must be proven by a preponderance of the testimony, at least three times before making the inquiry of Judge McMahan.

■ The third assignment of error is predicated upon the refusal of the court to permit Dr. Charles G. Robertson, who arrived at the scene of the accident a short time after it occurred and who stated that he saw a wreck and that the car was about forty yards from Miller street and lying up against the west curbing, to answer the following question: "You may go ahead now, doctor, and describe the scene". The objection was made that this did not prove any issue in the case and was not a part of the res gestae. The main purpose of the testimony, as stated by counsel at the time, was that there was going to be a difference as to the speed of the car and that the evidence would be material in determining the actual speed of the car at the time. No answer was tendered to indicate definitely what Dr. Robertson would have stated. He afterwards stated that he was not acquainted with any of the injured persons, that he saw a young woman lying on the pavement, and afterwards found her to be Frances Monner, but did not examine her, only superficially. In regard to any evidence that might indicate the speed

of the car, such as directions and skid marks, it was fully described by officer E. C. Charlton, who arrived at the scene of the accident a short time thereafter and noticed the skid marks and directions the car had taken, and stepped off the distance that the car skidded, and on the following day, together with another officer, measured the same. The testimony plainly shows the place from which the car commenced to skid, which was near a point opposite the south line of Wilson street for a distance of 147 feet, striking the curb on the west side of Commercial street, then angling northwesterly 108 feet to where the car came to a rest against another car. The appearance of the skid marks and the imprint made upon the curbing on the east side of Commercial street and all of the particulars that would throw any light upon the movement of the car were fully portrayed by other witnesses, so that if any testimony of Dr. Robertson that was excluded would have been material it would have been cumulative and plaintiff was not injured by the court's ruling that so far as that question was concerned the objection was sustained. There had been no testimony to show that the conditions of the premises were the same at the time Dr. Robertson arrived as they were immediately after the accident, although the intervening time was apparently very short. There was no reversible error in such ruling.

■ The next assignment is predicated upon the refusal of the court to permit plaintiff's witness, Pell Hannon, an eyewitness of the accident, to describe the skid marks made by defendant's car as observed by the witness several days after the accident. The witness, Pell Hannon, testified as to all of the circumstances that he saw at the time of the accident before the car

came to a rest against his car on the northeast side of Commercial street. He resided at Albany and after returning home, returned to the scene of the accident several days thereafter. Upon being asked whether the skid marks were still there he said, "I couldn't say". The witness having so testified, it was not competent for him to give testimony as to what he saw several days afterwards, particularly as the skid marks, the length thereof and the directions had been all thoroughly explained by other witnesses and there was no controversy in regard thereto. There was no error in the court so ruling. *Riley v. Good*, 142 Or. 155 (18 P. (2d) 222).

■ The next assignment of error is predicated upon the court permitting the jury to be instructed by Judge McMahan, who had been disqualified from acting in the case and refused to give in person further instructions desired by the jury. As stated, Judge McMahan of one department of the court, had been disqualified by an affidavit of prejudice, but counsel for both sides stipulated, when Judge Lewelling returned to his home at Albany, that Judge McMahan might receive the verdict. We think this stipulation would imply that both parties consented to have Judge McMahan direct the proceedings thereafter necessary for the trial. It would not be expected when they had agreed that Judge McMahan would receive the verdict that the judge would simply sit on the bench like a "knot on a log" and not direct any of the proceedings. As to the instructions which had been thoroughly and plainly given by Judge Lewelling, who was familiar with the facts in the case, Judge McMahan very wisely read such instructions upon the points inquired in regard to by the jury, and the only independent instruction that Judge

McMahan gave was that the issues should be proven by a preponderance of the evidence, which was perfectly proper and essential under the circumstances, although the jurors had been several times so informed by Judge Lewelling. It was immaterial whether Judge McMahan read that from Judge Lewelling's instructions or stated it. The plaintiff has not pointed out how he has been prejudiced or in what way the error which he claims was prejudical to him. Counsel for plaintiff did not require or desire that Judge Lewelling should return from Albany to give further instructions. Section 2-313, Oregon Code 1930; *Sprague v. Astoria,* 106 Or. 253 (204 P. 956, 206 P. 849); *Lovell v. Potts,* 112 Or. 538 (207 P. 1006, 226 P. 1111). Counsel for plaintiff did not at the time object to Judge McMahan's giving further instructions, and apparently the jury was informed in regard to all questions which appeared necessary to give the information they desired at the time they returned into court to ask for further instructions. There was no error in these proceedings.

It is noted that one of the last of Judge Lewelling's instructions read to the jury upon the agreement of counsel at the time the jury so returned pertained to the statute covering the liability of a host in transporting a guest in an automobile, which contains that part of the statute that there is no cause of action against the operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of the owner or operator or caused by his gross negligence, or intoxication, or his reckless disregard of the rights of others. So, at a late time during the trial of the case, the attention of the jury was called to that part of the law in regard to the reckless

disregard of the rights of others, about which plaintiff complains as having been omitted from one part of an instruction, although it was contained in another part of the same instruction.

There was testimony introduced on the part of defendant tending to show that the defendant was driving at the rate of 35 miles per hour and that at the time he put on his brakes to slacken up the speed of his car and wait for the approach of a car coming from the north, the car skidded. It was afterwards ascertained that the brake of the right front wheel was defective, that the "adjusting stud" (or screw) was missing, which would eliminate the braking power on that wheel, and that in such condition of the car, when the brakes were applied, the car would likely get beyond the control of the driver and even might wrench the wheel from his hands. Evidently the jury found that the defendant, who was taking his sweetheart for a ride, was not guilty of gross negligence or of reckless disregard of the rights of Frances Monner, but that it was purely an accident.

We have carefully read the evidence pertaining to the alleged negligence of the defendant and all of the charge of the learned trial judge to the jury. The question was fairly submitted to the jury. The plaintiff had a fair and impartial trial.

We find no prejudicial error in the record and the judgment of the circuit court is affirmed.

RAND, C. J., CAMPBELL and BAILEY, JJ., concur.