Argued October 12, 1955, affirmed March 21, 1956

# FALLS *v.* MORTENSEN
295 P. 2d 182

*James Arthur Powers,* Portland, argued the cause for appellant. On the brief were Earle P. Skow and David R. Williams, of Portland.

*Burl L. Green,* of Portland, argued the cause for respondent. On the brief Green, Richardson, Green & Griswold, of Portland.

Before WARNER, Chief Justice, and TOOZE, ROSSMAN, LUSK, BRAND and LATOURETTE, Justices.

BRAND, J.

The plaintiff, a pedestrian, recovered a verdict and judgment for general, special and punitive damages separately assessed against the driver of an automobile which struck him down while he was crossing the street at a point other than an intersection. Defendant appeals.

The principal issues in the case relate to the pleadings, proof and instructions concerning alleged wanton misconduct of defendant and the effect thereof on the defense of contributory negligence.

In a second amended complaint as further amended on the day of trial, plaintiff alleged, in substance, the following: That Southeast Powell Boulevard runs easterly and westerly and is intersected at right angles by Southeast 61st Avenue; that on 13 April 1951 plaintiff was walking across Southeast Powell Boulevard in a general southerly direction "on the westerly side of * * * S.E. 61st Avenue" when an automobile "operated by defendant Elvis K. Mortensen, proceeding in a general westerly direction, struck plaintiff, injuring him"; that on the evening of April 12 and the early morning of the 13th the defendant was at a party, drank intoxicating liquor, and left the dance hall in an intoxicated condition about a half hour before the accident. The complaint further alleges that the defendant in reckless disregard of the probable consequences of his acts "and with wanton

disregard for the rights and safety of others, was wanton, reckless, careless and negligent in the following particulars:

"1. In failing and neglecting to yield the right of way to plaintiff.

"2. In driving and operating said automobile at a dangerous and reckless rate of speed, under the circumstances then and there attendant.

"3. In failing to maintain a proper or any lookout for pedestrians, and particularly for this plaintiff.

"4. In failing and neglecting to keep said automobile under proper or any control, so as to have been able to stop, swerve or otherwise avert striking the plaintiff.

"5. In driving and operating said automobile on the wrong or southerly half of said S.E. Powell Boulevard."

A new paragraph was added to the complaint at the time of trial, reiterating specifications 2, 3, 4 and 5 supra, but characterizing them only as reckless, careless and negligent, omitting from the added paragraph the words characterizing defendant's conduct as being done wantonly and in reckless disregard of probable consequences. Thus the complaint characterized the specified acts as wanton in one paragraph and as negligent in another. We have omitted the allegations directed against the defendant McClellan, named in the complaint because he was granted a nonsuit. But we add that the complaint stated that McClellan knew that the defendant Elvis K. Mortensen was incompetent to drive the vehicle. It is further alleged that plaintiff suffered substantial injuries as a proximate result of the defendant's wanton disregard for the rights and safety of others and the negligence and gross negligence of defendant.

We observe that in a first amended complaint plaintiff had alleged as an additional specification wantonness in "driving said automobile on a highway while under the influence of intoxicating liquor." That allegation was stricken by the court and therefore does not appear in the second amended complaint. However, the court refused to strike from the complaint the prayer for punitive damages "in view of the claimed intoxication and other matters related to the accident." The judge who ruled on the motions was not the judge who presided at the trial.

In addition to denials of misconduct the defendant pleaded contributory negligence as follows:

"1. In attempting to cross said street at a place other than the crosswalk.

"2. In failing to keep a lookout for automobiles then traveling on the highway, particularly defendant's automobile.

"3. In failing to yield the right of way to defendant's automobile.

"4. In suddenly leaving a place of safety and stepping into the path of the oncoming automobile at a time and under such circumstances as to make an accident inevitable.

"In placing himself in a position of danger when a safe place was open to him."

The reply was a general denial.

■ The first assignment of error is directed against an instruction given to the jury. In it the court stated that contributory negligence is no defense to an action based upon a defendant's wanton disregard of the rights of others. This portion of the instruction was undoubtedly correct. *Cook v. Kinzua Pine Mills*, 207 Or 34, 293 P2d 717; Prosser on Torts, 2d ed, § 51. The

instruction to which exception is taken continued with the following definition:

"* * * Wanton misconduct is an intentional doing or failing to do of an act when one knows or has reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates unreasonable risk of harm to others but also involves a high degree of probability that substantial harm will result to him."

Defendant excepted to the instruction which advised the jury that contributory negligence was no defense to an action for wanton misconduct. The ground of complaint was that the instruction was "contrary to law and there are no facts in the record to support any such theory." The exception taken did not advise the court of any claim that the charge of wantonness was not properly pleaded in plaintiff's complaint. But that claim is now made in defendant's brief. No motion was made to make the allegation more definite and certain and no motion was made to separately state the charges of wantonness and those of negligence. See *Estrada v. Orwitz,* 75 Cal App2d 54, 170 P2d 43. No demurrer to the complaint was filed. We find no intimation by defendant that the complaint failed adequately to allege wanton misconduct until the time when he filed his motion for a new trial. Even at the close of plaintiff's case when he sought an order withdrawing from the consideration of the jury the claim for punitive damages he based his motion on the alleged ground that there was no evidence of wantonness without any assertion of insufficiency of the pleading in that respect. In considering the sufficency of the complaint as a charge of wanton misconduct, the allegation that defendant was intoxicated should not be overlooked.

■ In the well-considered case of *Ziman v. Whitely,* 110 Conn 108, 147 A 370, the court, by Justice Maltbie, said:

> "The complaint alleges that the accident was caused 'by the wanton negligence' of the defendant while driving along the street 'wantonly, recklessly and negligently.' It is evident that the pleader, having in mind wanton misconduct, failed to realize that, as we have several times pointed out, the expressions 'wanton negligence' or 'reckless negligence' are anomalous. A wanton act is one done 'in reckless disregard of the rights of others * * * evincing a reckless indifference to consequences to the life, or limb, or health, or reputation or property rights of another. * * *' It is 'more than negligence, more than gross negligence. It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of action,' equivalent in its results to willful misconduct. Bordonaro v. Senk, 109 Conn. 428, 147 A. 136. It is true the complaint is inartificially drawn, but, reasonably construed, it indicated that a claim of wanton misconduct was intended, and, particularly after the appellant has gone to trial without moving for a more specific statement and a verdict has been rendered, must its allegations be deemed sufficient to sustain a recovery upon that basis. Mezzi v. Taylor, 99 Conn. 1, 9, 120 A. 871."

In conformity with that opinion we hold that after verdict the complaint must be held to have adequately alleged wanton misconduct. Defendant was in no way misled.

The instruction given by the trial court and quoted supra is substantially the same as the rule laid down in 2 Restatement of Torts, § 500, which reads as follows:

> "The actor's conduct is in reckless disregard of the safety of another if he intentionally does an

act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.''

The authors of the Restatement note that the conduct described in section 500 is often called wanton or wilful misconduct. We quote from the ''Comment'' on section 500:

"In order that the actor's conduct may be in reckless disregard of the bodily security of others, it must not only involve a high degree of probability that death or serious bodily harm will result therefrom, but the circumstances must be such that the risk so created is unreasonable. * * *'' 2 Restatement of Torts, p 1293.

Prosser defines wantonness as follows:

" 'Wantonness,' or 'recklessness,' on the other hand, means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to the consequences, amounting almost to willingness that they shall follow; but this has sometimes been held not to be indispensable, so long as there is great danger known to the actor or apparent to a reasonable man. The distinction between wilful and wanton conduct is that between one who casts a missile intending that it shall strike another, or believing that it is certain to strike him, and one who casts it where he has only reason to believe that it is extremely likely to do so.'' Prosser on Torts, 2d ed, § 33, p 151.

See also pages 289, 290, § 51. The same author points out that wanton misconduct will justify an award of punitive damages and will render defendant liable though there is ordinary contributory negligence on the part of the plaintiff. Prosser on Torts, 2d ed, § 33, pp 150, 151.

Again, we read:

"* * * A defendant's act is properly characterized as wilful, wanton, or reckless, within the meaning of the foregoing rule, only when it was apparent, or reasonably should have been apparent, to the defendant that the result was likely to prove disastrous to the plaintiff, and he acted with such an indifference toward, or utter disregard of, such a consequence that it can be said he was willing to perpetrate it. The elements necessary to characterize an injury as wantonly or wilfully inflicted are (1) knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another, (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand, and (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another. * * *"' 38 Am Jur 855, Negligence, § 178.

■ In the recent case of *Cook v. Kinzua Pine Mills Co.*, 207 Or 34, 293 P2d 717, this court, in a unanimous opinion defined wantonness as follows:

"* * * (3) * * * the doing of an intentional act of an unreasonable character in disregard of a risk known to the actor, or so obvious that he must be taken to have been aware of it and so great as to make it highly probable that harm would follow, usually accompanied by a conscious indifference to consequences. Prosser on Torts, 2d ed, § 33, p 150. In the third category contributory

negligence is no defense and for conduct of that kind a trespasser may recover  *  *  *.''

We find the weight of authority supports the definitions of wanton misconduct which we have set forth supra. Such misconduct is different in kind and not merely in degree from negligence ordinary or gross. One guilty of wanton misconduct is subject to liability which is greater in scope than that which applies to negligent persons and contributory negligence is generally held to constitute no defense. Prosser on Torts, 2d ed, § 51, pp 289-290; 2 Restatement of Torts 1261-1262, § 482; 38 Am Jur 693, § 48, and notes.

In *Kasanovich v. George,* 348 Pa 199, 34 A2d 523, the court broadly stated that:

"Apparently all of the jurisdictions in which the question has arisen have held that contributory negligence is not a defense to an action for injury caused by reckless or wanton misconduct on the part of the defendant. Restatement, Torts, section 482(1), is to the same effect. It must be understood, of course, that wanton misconduct is something different from negligence however gross,—different not merely in degree but in kind, and evincing a different state of mind on the part of the tortfeasor. Negligence consists of inattention or inadvertence, whereas wantonness exists where the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong.  *  *  *''

Again, in *Donnelly v. Southern Pacific Co.,* 18 Cal2d 863, 118 P2d 465, the court said:

"*  *  *  A tort having some of the characteristics of both negligence and willfulness occurs when a person with no intent to cause harm inten-

tionally performs an act so unreasonable and dangerous that he knows, or should know, it is highly probable that harm will result. Rest. Torts, sec. 500, et seq.; Prosser, Torts, pp. 260, 261. Such a tort has been labelled 'willful negligence', 'wanton and willful negligence', 'wanton and willful misconduct', and even 'gross negligence'. It is most accurately designated as wanton and reckless misconduct. It involves no intention, as does willful misconduct, to do harm, and it differs from negligence in that it does involve an intention to perform an act that the actor knows, or should know, will very probably cause harm. See Kastel v. Stieber, 215 Cal. 37, 46, 8 P.2d 474; Albers v. Shell Co., 104 Cal.App.733, 286 P. 752; Tognazzini v. Freeman, 18 Cal.App. 468, 123 P. 540; 45 C.J. 674. Wanton and reckless misconduct is more closely akin to willful misconduct than to negligence, and it has most of the legal consequences of willful misconduct. Thus, it justifies an award of punitive damages, and contributory negligence by the plaintiff is not a defense. See cases cited in Prosser, Torts, p. 261.''

Other cases supporting our conclusion as to the nature of wanton misconduct are *Fonda v. St. Paul City Ry. Co.,* 77 Minn 438, 74 NW 166; *Vecchio v. Vecchio,* 131 Ohio St 59, 1 NE2d 624; *Atchison, Topeka & Santa Fe Ry. Co. v. Baker,* 79 Kan 183, 98 P 804; *Payne v. Vance,* 103 Ohio St 59, 133 NE 85; *Jenkins v. Sharp,* 140 Ohio St 80, 42 NE2d 755; *Conrad v. Wheelock,* 24 F2d 996; *Bellenger v. Monahan,* 282 Mass 523, 185 NE 346; *Adkisson v. City of Seattle,* 42 Wash 676, 258 P2d 461; *Alabam Freight Lines v. Phoenix Bakery, Inc.,* 64 Ariz 101, 166 P2d 816; *Hoesel v. Cain,* 222 Ind 330, 53 NE2d 165; *Womack v. Preach,* 63 Ariz 390, 163 P2d 280; *Wise v. Hollowell,* 205 NC 286, 171 SE 82; *Scaia's Case,* 320 Mass 432, 69 NE2d 567; *Titus*

*v. Lonergan,* 322 Mich 112, 33 NW2d 685; *Teeter v. Pugsley,* 319 Mich 508, 29 NW2d 851.

■ The defendant contends that "the doctrine of wantonness is applicable only to conduct of the defendant occurring after discovery of plaintiff's peril." The authorities cited reject this view. Defendant and some courts appear to have confused the rule concerning wanton misconduct with the "last clear chance" or "discovered peril" rule. To adopt defendant's contention would, in substance, eliminate the rule concerning wanton misconduct from our jurisprudence in these tort cases. The last clear chance doctrine permits recovery by a negligent plaintiff when his negligence has so spent itself as to become a condition, and when the defendant having acquired actual knowledge and appreciation of plaintiff's danger, fails to use proper means to avoid injuring him. *Emmons v. Southern Pacific Co.,* 97 Or 263, 191 P 333; *Smith v. Southern Pacific Co.,* 58 Or 22, 113 P 41; *Landis v. Wick,* 154 Or 199, 57 P2d 759, 59 P2d 403; *Rew v. Dorn,* 160 Or 368, 85 P2d 1031; *Deere v. Southern Pacific Co.,* 123 F2d 438, 86 Led 1217, certiorari denied, 315 US 819. But in this situation the existence of a wanton state of mind becomes immaterial. A plaintiff guilty of contributory negligence needs only to prove *simple negligence* on the part of the defendant occurring after actual knowledge and appreciation of plaintiff's peril. *Smith v. Southern Pacific Co.,* supra. The last clear chance doctrine bears no necessary relation to the rule of liability for wanton misconduct, and that rule, under the authorities cited, is not necessarily dependent upon proof of knowledge and appreciation of the peril of the *particular person* injured.

The great obstacle to the development of a satisfactory system of tort law in this field arises from

the fact that the courts have ascribed different meanings to the same words, with the result that it is difficult to draw the line between the various types of conduct as to which the law applies different legal consequences. The types with which we are necessarily concerned are (1) simple negligence, (2) gross negligence, (3) wanton misconduct, and (4) assault and battery. If instructions to juries are not to become or remain a confusing hodgepodge of indefinite verbiage, we must attempt more clearly to draw the line between the different types of conduct. *Cook v. Kinzua Pine Mills Co.*, supra.

In this field of jurisprudence we find the following phrases in frequent use, ''wilful misconduct,'' ''wilful negligence,'' ''wanton negligence,'' ''reckless disregard,'' ''wanton misconduct,'' ''more than gross negligence.'' The authorities cited demonstrate that ''wanton negligence'' and ''wilful negligence'' are terms which should be abandoned. Especially confusing is the use of the word ''wilful'' to characterize conduct. We have said that ''wilfully'' is synonymous with ''knowingly.'' *Wong v. City of Astoria,* 13 Or 538, 11 P 295. Again, '' 'To willfully do an act implies that it was done by design, done for a set purpose.' '' *Monnet v. Ullman et al.,* 129 Or 44, 55, 276 P 244.

> '' 'To constitute a willful injury, the act which produced it must have been intentional, or must have been done under such circumstances as evinced a reckless disregard for the safety of others, and a willingness to inflict the injury complained of. It involves conduct which is quasi criminal.' '' *Monnet v. Ullman et al,* supra, 129 Or 44, 56, 276 P 244.

In *Fry v. Hubner,* 35 Or 184, 186, 57 P 420, wilfully was apparently considered merely a conclusion of law.

In *Siuslaw Timber Co. v. Russell,* 91 Or 6, 178 P 214, "wilfully and knowingly" was held to mean action with knowledge and specific intent.

In *Cowgill v. Boock,* 189 Or 282, 218 P2d 445, it was held that a father who drove his automobile while intoxicated and compelled his young son to ride with him, the result being the death of both, was guilty of "wilful misconduct," yet there was no intimation that the father intended to kill the boy, and the concurring opinion stated that "Of course, he did not intend to do so". Yet, in the same case, wilful misconduct was defined as follows:

> " 'Willful misconduct depends upon the facts of a particular case, and necessarily involves deliberate, intentional, or wanton conduct in doing or omitting to perform acts, with knowledge or appreciation of the fact, on the part of the culpable person, that danger is likely to result therefrom.' Citing numerous authorities."

Turning to Words and Phrases, we find a multitude of cases cited in which the word "wilful" is said to connote design, intent, or specific intent. 45 Words and Phrases, perm ed, pp 187-249. In many other cases wilful is used as synonymous with "wanton" though the use of the word in that sense is frequently criticized. 45 Words and Phrases, pp 240-243. In view of the fact that there was no suggestion of intent on the part of the father to kill his son, we think that this court in *Cowgill v. Boock* must have used the word "wilful" as meaning "wanton." The confusion arises from a failure on the part of litigants and some courts to distinguish between intent to act wantonly on the one hand, and intent to injure the particular plaintiff, on the other.

By way of contrast, in *Denton v. Arnstein,* 197 Or

28, 250 P2d 407, the complaint alleged that defendant did wilfully, maliciously, deliberately and wrongfully drive his car into the car of plaintiff, and we held that the charge was one of assault and battery. Since "wilful" has been held to include intention to injure the particular plaintiff (*Monnet v. Ullman et al; Siuslaw Timber Co. v. Russell;* and *Denton v. Arnstein,* all supra,) and has also been held to describe wrongful (wanton) action in which there was no specific intent to injure the plaintiff (*Cowgill v. Boock,* supra), we conclude that as used in this jurisdiction, the word does not connote a definite quality of conduct, and that conduct, commonly described as wilful, should be classified as either grossly negligent, wanton or intentional (assault), according to the facts presented, to the end that a clear distinction may be made between a general intent to act wantonly and a specific intent to injure the plaintiff.

The most difficult distinction, but one which frequently must be made, is that between gross negligence and wanton misconduct. The definitions of gross negligence, as approved by this court, disclose a wide variety, and in a few cases, direct inconsistency. In the early cases decided shortly after the enactment of our guest statute we approved a comparatively simple definition of gross negligence. We characterized it as great negligence, "a degree of negligence materially greater than that which would constitute ordinary negligence." *Monner v. Starker,* 145 Or 168, 26 P2d 1097; *Storla v. S.P.&S. Trans. Co.,* 136 Or 315, 297 P 367, 298 P 1065. As more complex situations presented themselves our definitions likewise became more detailed. The definition employed in *Rauch v. Stecklein,* 142 Or 286, 20 P2d 387, was followed and approved in many cases. And see, *Lee v. Hoff,* 163 Or

374, 97 P2d 715; *Ross v. Hayes,* 176 Or 225, 157 P2d 517.

While the court has earnestly striven to define gross negligence, we have also frequently recognized that it is impossible to adopt a definition which will be appropriate in all cases, and have said that "the question as to what constitutes gross negligence depends upon the facts and circumstances in each individual case." *Herzog v. Mittleman,* 155 Or 624, 65 P2d 384; *Storm v. Thompson,* 155 Or 686, 692 64 P2d 1309.

In *Turner v. McCready,* 190 Or 28, 222 P2d 1010, recognizing the difficulty involved in attempting to give a definition appropriate for all cases, we resorted to an analysis of the specific facts in a long array of our earlier decisions, in an attempt by inclusion and exclusion, to find a guide for future decisions concerning gross negligence. See also, *Johnson v. Leach,* 197 Or 430, 253 P2d 642. The principles announced and the analysis made may serve to guide the trial judge and this court in determining whether there is or was sufficient evidence to require submission of gross negligence to the jury, but it is impossible to communicate the results of such analysis to a jury in the form of instructions. These considerations have inclined this court in its more recent decisions to the view that after the trial judge has considered the law and the facts, and has concluded that the issue of gross negligence is one for the jury, he would do well to instruct in the simplest possible language concerning the nature of gross negligence. Accordingly, in *Rogers, Adm'r v. So. Pac. Co. et al,* 190 Or 643, 649, 277 P2d 979, we said, "In its simplest definition gross negligence means nothing more nor less than great negligence." Again, we spoke of negligence of

"such an aggravated character as to constitute gross negligence."

In *Weber, Adm'r v. Te Selle, Adm'r,* 191 Or 85, 87, 228 P2d 796, we said:

"In many decisions of this court brought under such statute, we have attempted to define gross negligence inasmuch as the statute itself contains no definition of what constitutes gross negligence in the operation of an automobile. No standard definition applicable to all cases has been or can be discovered. In the recent case of Rogers, Administrator of the Estate of Betsey Lou Rogers v. Southern Pacific Co. et al, and McKenzie, decided on February 21, 1951, we said that gross negligence 'means nothing more nor less than great negligence.' "

While greater detail may occasionally be required in instructions, we think the problem will be greatly clarified if as a rule the jury is instructed in accordance with the simple definition to which we seem to have returned. Only so will it be possible to make clear to the jury the essential difference between gross negligence and wanton misconduct. On one occasion we cited with apparent approval a definition of gross negligence as including wanton misconduct. *Gill v. Selling et al,* 125 Or 587, 262 P 812. This we must reject. The distinction between gross negligence and wanton misconduct has been repeatedly recognized. *Rauch v. Stecklein,* and *Ross v. Hayes,* both supra. In truth the distinction must be clearly explained to the jury because we have held that contributory negligence is a defense in an action for gross negligence but is not a defense in an action for wanton misconduct. *Cook v. Kinzua Pine Mills Co.,* supra; *Hawks v. Slusher,* 55 Or 1, 104 P 883, and cases cited supra.

■ The definition of wanton misconduct, as given by the trial judge in the pending case, is supported by a great weight of authority. It makes clear the difference between such conduct and gross negligence. It also clarifies the difference between wanton misconduct and assault and battery. Both are the result of intentional action, but only the latter involves specific intent to injure the plaintiff. The legal results are in most, if not all cases, the same.

We now consider the element of intoxication in relation to wanton misconduct.

In *Rasmussen v. Clark,* 346 Ill App 181, 104 NE2d 325, the defendant truck driver struck and killed plaintiff's intestate who was working on the highway. Defendant was a hit and run driver and shortly thereafter was found in a drunken condition. Deceased was on or near the shoulder of the highway and defendant was driving "upwards of 50 miles an hour." The appellate court quoted with approval from *Schneiderman v. Interstate Transit Lines,* 394 Ill 569, 69 NE2d 293, in part, as follows:

"‘* * * ‘The question whether a personal injury has been inflicted by wilful or wanton conduct is a question of fact to be determined by the jury. Bernier v. Illinois Central Railroad Co., 296 Ill. 464, 129 N.E. 747.’ ’’

In *Bellenger v. Monahan,* 282 Mass 523, 185 NE 346, plaintiff stopped his automobile at the extreme right-hand side of a public bridge, 60 feet wide between curbs, under a large electric light. He went to the rear of the car to examine his tire carrier and was hit by defendant who was intoxicated. Verdict and judgment for plaintiff was affirmed. On appeal the Massachusetts Supreme Court said:

"Under the evidence most favorable to the plaintiff the jury were justified in finding that the

operation of the truck in the circumstances constituted wilful, wanton or reckless conduct. * * *"

In *Chitwood v. Stoner*, 60 Ca App 599, 4 SE2d 605, the charge was that defendant was wilful and in utter disregard of the safety of plaintiff. The appellate court treated the complaint as an allegation of "wilful negligence." The court said:

"The evidence for the plaintiff was sufficient to show that the defendant, while under the influence of whisky, was operating an automobile in violation of State statutes and city ordinances, in reference to the speed of the car and the failure to check speed and observe caution at a dangerous place in the street which was being dug up and paved; that a large number of workers were present, and that the defendant ran his truck against a cement mixer near which the plaintiff had been working, struck another man, proceeded some seventy-five feet, and struck the plaintiff who was picking up a shovel with which he had been working. Other persons who were in the street avoided injury by jumping to safety. The defendant did not stop after striking the plaintiff and contended that his car was skidding and that he did not know he had struck anyone."

It was held that there was ample evidence to support the charge of wilful negligence and that contributory negligence was no defense. The evidence in our opinion should have been characterized as wanton misconduct rather than by the self-contradictory term of wilful negligence. But the terminology used does not impair the authority of the decision on the facts proven.

In *Foster v. Redding*, 97 Colo 4, 45 P2d 940, the plaintiff, as guest, charged the defendant driver with wanton and wilful misconduct. Defendant drove to an inn at the top of Lookout Mountain. While there he became intoxicated. He well knew the road which

was a "winding, and in some places precipitous, mountain highway." In rounding a curve, with no apparent excuse, save his incapacity, he ran into a fence, stopped, and then "(apparently using his accelerator by mistake instead of his brake) suddenly started" again and the car shot down an embankment, injuring the plaintiff. The court said:

"The briefs are largely devoted to a discussion of the meaning of the phrase 'willful and wanton disregard.' It presents no serious problem. Like 'reasonable doubt,' its meaning seems so self-evident that attempts at further definition involve the risk of explaining 'what seems most clear so clearly that it seems perplexed.' If, however, any such is justified, we think all requirements have been met in No.13394, Millington v. Hiedloff (Colo) 45 P.2d 937, this day decided. We might, however, add that our statute providing for exemplary damages uses the phrase 'wanton and reckless disregard.' Section 6307, p. 1646, C.L. 1921.

"In construing this we said: 'If, conscious of his conduct and the existing conditions, he [defendant] knew, or should have known, that the injury would probably result, the requirements of the statute are met.' Clark v. Small, 80 Colo. 227, 250 P. 385, 386.

\* \* \* \* \*

"One who is willfully and wantonly negligent may not be intoxicated, but one who, sufficiently under the influence of liquor to impair his capacity as a driver, or who has just consumed intoxicants sufficient to speedily reduce him to incapacity, yet sufficiently sober to know he is undertaking a sober man's job, puts himself at the wheel of an automobile and takes the road, is guilty of a willful and wanton disregard of the rights of all persons who ride with him or use the highway he travels. In the instant case, the allegations of either count could have been proved under the other. Hence,

election was superfluous and failure to elect no prejudice.''

In *Titus v. Lonergan,* 322 Mich 112, 33 NW2d 685, it was held that

"Evidence that motorist under influence of intoxicating liquor drove in disregard of guest passenger's protest at high rate of speed, on wrong side of road and collided with fully lighted truck traveling slowly on shoulder in its proper lane presented jury question as to wether driver was guilty of wilful and wanton misconduct sufficient to charge owner, with whose knowledge and consent motorist was driving, with liability for injuries sustained by guest. Comp. Laws 1929, § 4648.'' Headnote 8.

*State v. Bolsinger,* 221 Minn 154, 21 NW2d 480, was a criminal prosecution. The court quoted with approval a portion of the opinion in *Foster v. Redding,* which we have set forth supra.

In *Miller v. Blanton,* 213 Ark 246, 210 SW2d 293, it was held that

"Evidence that defendant motorist after drinking intoxicating liquor to extent that his talk and walk were noticeably affected, and to extent that, according to his own statement, he was 'half drunk', entered his automobile and sought to drive it over improved state highway, established that he was guilty of wanton disregard of rights and safety of others, so as to authorize occupants of automobile with which he collided to recover punitive damages.'' Headnote 2.

■ The authorities cited supra indicate that voluntary intoxication is a circumstance which is highly relevant on the issue of wanton misconduct. We will now consider whether there was any substantial evidence of

wanton misconduct sufficient to require the submission of that issue to the jury in the pending case.

Defendant was driving west on S. E. Powell Boulevard in the city of Portland. Between the intersections of 60th and 61st Avenues he was operating his automobile at a speed between 45 and 55 miles per hour. The hour was about 1 a.m. Plaintiff was crossing the street from north to south. He paused at the center line to let an eastbound car go by. He then started to walk. He was over the center line when he was hit by the defendant's westbound car, which was "straddling the yellow line." The night was "light" and the streets were dry. Visibility was good. An officer testified that defendant said he thought he saw somebody near 61st and Powell, but he "didn't remember hitting anybody." Witness Smith testified that defendant said first that he didn't see anyone but then he said he saw someone but didn't hit him. Defendant was arrested for being drunk in an automobile, and for violation of the "hit and run" statute. He was found guilty of being a hit and run driver by the Municipal Court. In the course of the evening the defendant had at least eight or nine drinks of whisky. Defendant as a witness admitted that he heard a thud at about the time he passed a vehicle which was going in the opposite direction. He did not tell anyone that he had heard the thud until a few weeks before the trial. He testified, "I just didn't want to admit it to anyone that I possibly had struck a person. I just wanted to keep it to myself."

There was convincing evidence from several witnesses that defendant was intoxicated. His speech was slurred, his eyes were glassy, and he couldn't stand on his feet. There was a strong odor of alcohol on his breath. His eyes were bloodshot and the pupils were

dilated. The police stopped the defendant at 28th and Powell. They found clothing marks on the "dust scum on the bumper and clothing impressions in the dust of the car, and a dent on the hood." On the windshield they found a smudge mark and one hair. Defendant explained that he had been in another accident a few days earlier. Defendant twice tried to rub against the car so as to obliterate the marks of the collision. After defendant struck the plaintiff he slowed down. He testified:

"A. Well, the first thing that came to my mind was my uncle. The car was in his name and I didn't want to involve him in any trouble of any sort because of myself.

"Q. Were you scared then, or not?

"A. Definitely, yes, I was. I—I don't know; I was scared and mixed up and I just beat it, got out of there."

■■ The evidence discloses the commission of at least two criminal offenses, and probably more. Defendant drove while intoxicated in violation of ORS 483.992(2). He committed the offense commonly known as "hit and run" in violation of ORS 483.602 for which the punishment may be imprisonment in the penitentiary. His conduct was criminal, unsoftened by a quasi. Flight from the scene of a crime may be considered as tending to show consciousness of guilt. So too, in this case the jury were entitled to consider his false statement that he did not know he had hit anyone, and his conduct after the collision for such bearing as it might have upon his allegedly wanton state of mind. Another statute provides that

"Any person who drives any vehicle upon a highway carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at

a speed or in a manner so as to endanger or be likely to endanger any person or property, is guilty of reckless driving and shall be punished:" ORS 483.992.

If defendant had been charged with the violation of that statute it would have been the duty of the trial court to submit the case to the jury on evidence such as was presented here. We find no merit in the first assignment of error.

■ By his second assignment of error defendant contends that the court erred when it gave in modified form three instructions requested by defendant. Each of the three instructions dealt with the law concerning contributory negligence. They were given by the court, but after each, the court explained that contributory negligence would not be a defense if the jury should find that defendant's conduct was wanton as defined. We find no merit in the second assignment.

■ By his third and last assignment the defendant contends that the trial court erred in giving the following instruction:

"'I instruct you that the law in the State of Oregon concerning the operation of a vehicle provides as follows:

"'Upon all highways of sufficient width other than one-way highways, the driver of a vehicle shall drive the same upon the right half of the highway, excepting when the right half is out of repair and for such reason impassable or when overtaking and passing another vehicle subject to the limitation set forth in the Statute.

"'In driving upon the right half of a highway, the driver shall drive as closely as practicable to the right-hand edge or curb of the highway, except when overtaking or passing another vehicle, or

when placing a vehicle in position to make a left turn.

" 'The Statute which I have just read to you means that under the conditions described in the Statute, one should drive as closely to the right hand edge of the highway as a reasonably prudent person would drive his vehicle, under all the conditions and circumstances existing. If you find that the defendants failed to so operate their vehicle, then the defendants will be negligent in that respect.' "

The first two paragraphs of the instruction were based upon ORS 483.302. The third paragraph constituted an interpretation of the statute and advised the jury to consider all the conditions and circumstances existing in determining how closely to the right edge of the highway one should, as a reasonably prudent person, drive his car.

The complaint expressly charged defendant with operating the automobile on the wrong or southerly half of the boulevard, and, as we have said, there was evidence that the plaintiff was hit after crossing the center line of the highway, and that defendant's vehicle was straddling the center line.

In support of the third assignment of error the defendant cites five cases.

In *Weinstein v. Wheeler*, 135 Or 518, 295 P 1096, the plaintiff, a blind man, was walking north on the westerly side of Third street, and on reaching the intersection of Third and Caruthers streets he proceeded to cross the latter street. There was substantial evidence that plaintiff had progressed northerly two-thirds of the distance across Caruthers street. Thus he was in the northerly or right-hand lane as the defendant approached at 15 miles an hour. Defendant turned her car slightly to the left in order to pass be-

hind the plaintiff. Plaintiff then became confused and turned about and sought to return to the southwest curb. Defendant drove onto the left-hand side of the street at the moment of the accident in an effort to avoid the plaintiff. It was under these conditions that the court said:

"* * * Rules of the road similar to ours, which require the operation of automobiles upon the right-hand side of the roadway, do not contemplate strict compliance with their provisions except when a car meets and passes another coming from the opposite direction: Clarke v. Woop, 159 App. Div.437 (144 N.Y.Sup.595); Hicks v. Morgan (Tex. Civ.App.), 259 SW263; Ripley v. Wilson, 140 Miss. 845 (105 So. 476); Straten v. Spencer, 52 Cal.App. 98 (197 P. 540); 42 C.J., Motor Vehicles, § 611, p 902. The four cases above cited represent instances where the driver, in an effort to avoid collision, turned to the left-hand side of the roadway; the courts held such conduct justifiable. In 42 C.J., p. 908, § 620, a collection of cases will be found to similar effect. It is our conclusion that the instruction was without error."

Obviously the decision was correct on the facts disclosed in the case.

The next case cited is *Hartley v. Berg,* 145 Or 44, 25 P2d 932. In that case the defendant rounded a curve and drove his car on the left side of the road and over a steep bank, overturning the car. Plaintiff, a passenger, charged gross negligence. No other car was involved and no pedestrian was involved. The court quoted the portion of the opinion in *Weinstein v. Wheeler* which we have set forth supra. It was held that the trial court erred in instructing the jury that driving on the wrong side of the road was negligence as a matter of law. The decision constituted a severe

restriction upon the express words of the statute, but it has been cited and followed and must be deemed to be controlling as to situations similar to those involved in that case, especially where the instruction characterized the act as negligence as a matter of law.

In *Austin v. Portland Traction Co.*, 181 Or 470, 182 P2d 412, plaintiff was a passenger in a Portland Traction Company bus. A collision occurred between the bus and a transfer company truck. Plaintiff alleged negligence by both bus and truck. She had judgment against the transfer company. The bus was being driven northerly on NW 16th Avenue in Portland. The collision occurred at the intersection of 16th Avenue with NW Marshall street. The easterly half of 16th street was restricted in area by the presence of parked automobiles along the curb. The truck was traveling easterly on Marshall street. When the bus had entered the intersection the driver saw the truck 100 feet west of the intersection. The bus had the right-of-way and proceeded into the intersection and was two-thirds of the way through when the collision occurred. The transfer company assigned as error the action of the court in withdrawing from the jury "the question of whether or not the traction company was negligent in driving its bus to the left of the center line of Sixteenth Avenue." There was evidence that the bus projected to the left of the center line to the extent of one foot. The court said:

> "The transfer company argues that the driving of the bus one foot to the left of the center of Sixteenth Avenue, being in violation of a statute, was negligence as a matter of law. The rule of the road indeed requires a motor vehicle to be driven upon the right half of the highway, except when overtaking or passing another vehicle proceeding in the same direction. Section 115-327, O.C.L.A.

Such requirement, however, is not absolute under all circumstances, and the rule does not contemplate a strict compliance therewith by drivers except when meeting and passing vehicles coming from the opposite direction.''

However, the court continued, as follows:

"* * * If there had been substantial evidence that the driving of the bus one foot over the center of this relatively narrow street, under the circumstances of the present case, was a proximate cause of the collision, then the question of the traction company's negligence in that respect should have been submitted to the jury under proper instructions. * * *''

The next case cited is *Spence, Adm'x v. Rasmussen et al.*, 190 Or 662, 226 P2d 819. In that case plaintiff was riding westerly on a bicycle and defendant was driving a truck in the same direction and was approaching the bicycle from the rear. Both bicycle and truck were on the right-hand side of the center line. Defendant alleged that the plaintiff was guilty of contributory negligence because he failed to drive as close as practicable to the right-hand edge or curb of the highway. We cited *Weinstein v. Wheeler,* and *Hartley v. Berg,* supra, and said:

"As so construed, the statute applies when vehicles are approaching from the front, not from the rear. The primary purpose of the statute is to provide ample clearance between motor vehicles proceeding in opposite directions when passing. Consequently, it follows as a matter of law that decedent was not at the time of the collision violating the provisions of § 115-327, for he was not then meeting or passing another vehicle coming from the opposite direction. * * *''

In *Prauss v. Adamski,* 195 Or 1, 244 P2d 598, the action was brought for the death of a passenger in an

automobile. At the time and place of the accident defendant "was driving the automobile along a dry, concrete highway, during daylight hours, and with no other traffic immediately approaching or following him. He had the whole highway to himself. He was not required to drive along the extreme right edge of the pavement." We cited the rule set forth in *Spence, Adm'x v. Rasmussen et al.*, and *Weinstein v. Wheeler,* supra, but we added: "Of course, one must keep to the right when being overtaken and passed by a vehicle coming from the rear. § 115-330, OCLA." It was held that the statute had no application because defendant had the entire highway to himself.

We have no criticism of the decisions in any of the cases cited. They hold the statute inapplicable (1) where the operator, in an emergency, and to avoid injury, drives to the left of the center line, *Weinstein v. Wheeler;* (2) when the driver has the entire road to himself, there being no other vehicle or pedestrian involved, *Hartely v. Berg,* and *Prauss v. Adamski;* (3) when the collision is in an intersection and the accident would have occurred just the same even if the bus had been on the right side of the highway, i.e., when the fact that the bus was one foot to the left of the center line was not a proximate cause of the injury, *Austin v. Portland Traction Co.*; (4) when both vehicles are on the right half of the highway going in the same direction, and the left half is unobstructed, *Spence, Adm'x v. Rasmussen et al.* In none of these cases was there an occupancy of the left lane of travel such as to create a dangerous situation if the traveler on the right side should encroach upon the left lane. We agree that the primary purpose of the statute was to provide ample clearance for cars proceeding in opposite directions when passing. The language used

in the decisions was appropriate to the facts of the specific cases, but none of the cases resembled the one at bar. Here there was evidence that a pedestrian was in the left lane when hit. Though plaintiff was not going in the opposite direction from that of defendant, he was going at approximate right angles to the course of the defendant and defendant was meeting and passing him. The situation presented in different form the very danger which was contemplated by the statute.

We do not construe the instruction given as applying the rule of negligence per se. As explained in the last paragraph of the instructions, the court indicated that the test was that of a reasonably prudent person under all of the circumstances. Furthermore, the only evidence in the record of any exception to the instruction in question is the statement by the court that an exception was taken and allowed to the giving of the instruction "addressed to the duty of drivers to drive on the right half of the highway." There is nothing to show any exception to the instruction regarding driving "as closely as practicable to the right-hand curb." Under the instructions given the jury must have found that defendant was guilty of wanton misconduct as to which any negligence of plaintiff on crossing the street between intersections or failing to yield the right-of-way would be no defense. Finding no reversible error, the judgment is affirmed.

LATOURETTE, J., did not participate in the decision of this case.