STATE, Respondent, v. ROSSMAN, Appellant.

(268 N. W. 702.)

(File No. 7888.   Opinion filed August 18, 1936.)

*Thomas McInerny,* of Elk Point, and *L. E. Waggoner, Dougherty & Flood,* and *Tom Kirby,* all of Sioux Falls, for Appellant.

*Walter Conway,* Attorney General, and *H. L. Bode* and *James Brown,* Assistant Attorneys General, for the State.

ROBERTS, J.   Defendant was convicted of manslaughter in the first degree on an information charging that while he was

driving an automobile on a public highway carelessly and heedlessly in willful and wanton disregard of the rights or safety of others and without due caution and circumspection and at a rate of speed and in a manner so as to endanger or be likely to endanger the persons of others, he struck and killed Thomas Baker and Marian Stewart. From the judgment and order overruling motion for new trial this appeal is taken. The principal contention is that the evidence is insufficient to sustain the verdict.

The accident occurred in front of the Airport Inn located on the paved highway between Elk Point and Sioux City. Defendant, shortly before 9 o'clock in the evening of June 8, 1934, left Sioux Falls in a Ford coach intending to return to his home in Sioux City. About 11:30 that evening decedents left the Airport Inn which is approximately 40 feet north of the highway and shortly thereafter were struck by the automobile driven by the defendant. Thomas Baker was killed almost instantly. He was dragged or carried along by the automobile for a distance of 100 or more feet. Marian Stewart was found south of the highway at a distance from the point of impact estimated by witnesses from 15 to 40 feet. He died en route to a hospital as a result of his injuries. The automobile itself bore evidence of the force of the collision. The hood was damaged on the right-hand side and torn loose from the back hinge. The bumper was bent, the radiator and grill were damaged and the right fender was badly dented. The defendant had driven his automobile from the west, and in that direction the highway from the Airport Inn is practically level and straight for a distance of five or six hundred feet.

Defendant admitted that he was driving the automobile which struck these men. He testified that the accident occurred immediately after he met a car at a point 50 or 60 feet from the place where the accident occurred traveling west, that he did not see the two men on the highway until the car struck them, and that he was traveling at a speed of 38 to 40 miles an hour upon the right-hand side of the highway. The other occupant of the car, Clinton White, testified that he was lying on the rear seat and did not see the accident.

There were three eyewitnesses who testified for the state. Two of these persons testified that they were approaching the Airport

Inn from the east in a car and were at a distance of approximately 300 feet when the accident occurred. They saw a car coming from the opposite direction which struck objects on the highway, but could not determine what the objects were at that distance. They did not see a car traveling west between them and the car of the defendant. The manager of the Airport Inn testified that she first heard a crash and looked and saw two objects, one going in the air and one thrown to the side. Another witness who resided across the highway from the Airport Inn testified that the highway where the accident occurred is lighted at night by floodlights on the Airport Inn and an adjacent building; that the highway was lighted on the night of the accident; and that he has driven toward the Airport Inn from the west at night and that the form of a man on the lighted portion of the highway can be seen for a distance of 200 or more feet. This was substantially the testimony of two other witnesses.

Section 4020, Rev. Code 1919, defining manslaughter in the first degree and so far as material to this action, reads as follows: "Homicide is manslaughter in the first degree in the following cases: 1. When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor."

It is the claim of the state that the deaths were caused by the violation of section 3, chapter 251, Laws 1929, which provides: "Any person who drives any vehicle upon a highway carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving and upon conviction shall be punished as provided in Section 64 of this act." Violation of these inhibitions is made a misdemeanor.

The language of the statute is in the alternative; the offenses created are, first, the careless and heedless driving of a vehicle in willful or wanton disregard of the rights or safety of others, and, second, the driving of a vehicle without due caution and circumspection at a rate of speed or in a manner so as to endanger or be likely to endanger any person or property. Section 4 of this same statute, the Uniform Motor Vehicle Act, deals specifically with restrictions as to speed. Under its provisions "any person driving

a vehicle on a highway shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at such a speed as to endanger the life, limb or property of any person." This section, subject to the provisions quoted, and so far as applicable in the instant case, further provides that it shall be prima facie unlawful for the driver of a vehicle to drive the same at a speed exceeding 40 miles an hour. If an offense charged under section 3 of this act is excessive speed, endangering life or property, a conviction may be sustained without proof of willfulness or wantonness.

We may rest our inquiry as to whether there is any basis in the evidence of willful and wanton disregard of the rights or safety of others, or of the operation of the automobile at a speed which under existing conditions was dangerous to pedestrians. It may be conceded that defendant was negligent, but a willful and wanton disregard of the rights and safety of others implies something more than a want of ordinary care. We do not have before us for consideration the question whether the conduct of the defendant constituted "culpable negligence" within the second-degree manslaughter statute which embraces every killing of a human being by the act, procurement, or culpable negligence of another which is not murder or manslaughter in the first degree or excusable or justifiable homicide. Section 4024, Rev. Code 1919. This court, construing the automobile guest statute, in the case of Melby v. Anderson, 64 S. D. 249, 266 N. W. 135, 137, defined "wilful and wanton misconduct" as follows: "They describe conduct which transcends negligence and is different in kind and characteristics. They describe conduct which partakes to some appreciable extent, though not entirely of the nature of a deliberate and intentional wrong. To bring the conduct of the defendant within the prohibition of this statute the jury must find as a fact that defendant intentionally did something in the operation of a motor vehicle which he should not have done or intentionally failed to do something which he should have done under such circumstances that it can be said that he consciously realized that his conduct would in all probability (as distinguished from possibly) produce the precise result which it did produce and would bring harm to the plaintiff."

It is true that the statute construed in that case has reference only to civil actions, but the words "wilful" and "wanton," used conjunctively, to describe the manner of operation of a motor vehicle, in the criminal statute under consideration, do not import less than that stated. There is no claim by the state that the car when it struck the men was not on the right-hand side of the highway; that defendant operated the car while in an intoxicated condition; or that the equipment on the car was not ample. No act was intentionally done or omitted in the operation of the car with the knowledge or expectation that injury was probable.

The state contends that the jury could justifiably have found from the evidence beyond a reasonable doubt that defendant, at the time of the accident, was traveling at a rate of speed much greater than was reasonable and proper and so as to endanger the life and limb of persons using the highway, and that the excessive speed was indicated by the physical facts. The tire marks on the highway, the distance the car traveled before it was stopped, and the condition of the car after the accident, the state contends sufficiently indicate excessive speed. Whatever inferences the jury may have drawn from the testimony with reference to the speed at which defendant was driving, and whether the jury was warranted in inferring that defendant was driving at an excessive rate of speed, it must also appear that the violation of the statute was the proximate cause of the accident. State v. Nicholas, 62 S. D. 511, 253 N. W. 737. It does not appear from the evidence that the two men entered the highway in front of the car at any appreciable distance, and there is no evidence tending to show that defendant could have stopped or swerved the car soon enough to have avoided the accident after he discovered the men on the highway if he had been traveling at a very reasonable rate of speed.

For the reasons indicated, the judgment and order appealed from are reversed.

All the Judges concur.