Argued January 6, affirmed February 26, 1953

# JOHNSTON *v.* LEACH

253 P. 2d 642

*Howard K. Beebe,* of Portland, argued the cause for appellant. On the brief were Glenn R. Jack, of Oregon City, W. H. Morrison, of Portland, and Maguire, Shields, Morrison & Bailey, of Portland.

*John O. Sheldahl,* of Oregon City, argued the cause for respondent. On the brief were John P. Misko, and Sheldahl & Misko, of Oregon City.

Before LATOURETTE, Chief Justice, and WARNER, LUSK, BRAND and PERRY, Justices.

BRAND, J.

The plaintiff, who was a guest in the defendant's car, brought this action for damages on account of personal injury alleged to have been caused by the gross negligence of the defendant. Verdict and judgment were rendered for the plaintiff, and the defendant appeals. The case is controlled by the provisions of OCLA, § 115-1001. There was no evidence of intentional injury or of intoxication. It follows that the plaintiff could recover only if there was substantial evidence of gross negligence or of reckless disregard of the rights of others. The defendant relies upon a single assign-

ment of error, namely, the denial by the court of his motion for a directed verdict.

The mishap occurred upon Highway 43 which runs between Oswego, Oregon, and the city of Portland. The complaint alleges that said highway is so constructed as to provide for three marked lanes of travel. The plaintiff was riding as a guest in the car driven by the defendant, in a northerly direction toward Portland, Oregon. The complaint alleges that the defendant, at a point approximately one mile northerly from Oswego, drove the car in a negligent, reckless, and unlawful manner, and caused the automobile to leave the traveled portion of the highway and to plunge down a steep incline upon the right side thereof, throwing the plaintiff from the automobile and causing the injuries described. It is alleged that the defendant was grossly negligent in that he drove the car at the time and place in question at a dangerous and reckless and unlawful rate of speed in excess of 75 miles an hour; that he failed to properly steer, operate, handle and control the accelerator so as to slow the automobile down and to have it under his control; that he failed to maintain a proper or any lookout, particularly, for cars approaching from the opposite direction, and:

"That the defendant, at the time and place in question, and in reckless indifference for his own safety and the safety of others, and particularly for the safety of this plaintiff, attempted to pass another automobile in front of him at a place where such passing on said highway is prohibited by law, by driving his said automobile from the right lane of said highway along the center lane thereof, and when confronted with closely approaching traffic, which he saw or should have seen, suddenly and violently, and with great speed as aforesaid, swerved his said automobile to his right and across

the said highway, and caused the same to leave the traveled portion of said highway, and to crash down a steep incline at the side of said highway.''

The answer was a general denial, except for the formal admission concerning the name of the defendant and the further admission of the allegation concerning State Highway No. 43, and the marking of the three lanes thereon. The motion for a directed verdict was made for the reason that ''there is no evidence of gross negligence'' or reckless disregard of the rights of others.

Upon this issue we are not permitted to weigh the evidence. We shall review it solely for the purpose of determining whether there was substantial evidence of gross negligence or reckless disregard.

The defendant, with the plaintiff as his guest, drove toward the city of Portland at a normal rate of speed, described as 45 to 55 miles an hour, until he got on the straight-of-way at Marylhurst College, which lies between Oregon City and Oswego. When he reached the straight-of-way at Willamette, defendant remarked that his car was running well, and from that point on he started driving at a high rate of speed, up to 75 miles an hour. The plaintiff testified that he was looking at the speedometer. We quote:

''* * * He got up near the entrance of Marylhurst College, and the speedometer was pausing on seventy-five, and I said, 'Lyle, for God's sake, slow down this car,' and he said, 'I am driving this,' —he got mad. He said, 'I am driving this,' and I said, 'All right, you drive it, but slow down,' and there at the end of that conversation we neared the end of the straight-of-way, and there was a number of curves before entering Oswego and across the bridge. He slowed down to make those curves, although he was still traveling, I would say, forty or

forty-five, somewhere in there on those curves. They were pretty sharp curves. He left the hill into Oswego and down to Oswego at forty-five miles an hour * * *.''

We again quote the testimony:

"* * * I looked at the speedometer, and as he left Oswego and down into the little canyon there or little gully he again floor-boarded the car, but he started picking up speed at a very fast rate, and there was a slight curve—there was a curve banking to the left as you leave Oswego, and the pavement was wet and the car—as he made this curve he was going around sixty-five at this time. The rear tires slipped sideways, and I said, 'Lyle, your tires are smooth. Slow the car down,' and there was a car in front of us at that time and he said, 'I will slow down as soon as we get around this car,' and we were passing this car, * * *.''

The defendant turned into the middle lane to pass a car which was proceeding in the same direction. The plaintiff continued:

"* * * as we were banking the curve to the right as we were going in the curve to the right, up ahead, I would say, from three to five hundred feet, there was another car pulling out to pass the car coming south towards Oswego, and Lyle seen the car—I seen the car, and he hit the brakes and reaved to the right. The car slid forward and then sort of swerved and went over the bank and down into the gutter.''

Plaintiff testified that at this time the north-bound car in the right lane was ''in back of us * * * at that point where you couldn't see him in your rear view mirror, and as you glanced sideways, you still couldn't see him through your side window * * *''.

It will be remembered that the complaint alleged and the answer admitted that the highway in question

is paved and is so constructed as to provide for three marked lanes of travel. The plaintiff testified that the lanes "are marked once in awhile." There were two yellow stripes going down the road and a white stripe in each lane of travel. The white stripe was on the right-hand side of the yellow stripe as the plaintiff drove northerly. Plaintiff testified that the car which the defendant passed immediately before the accident was driving 55 miles an hour, and that the defendant went by him at "a pretty good speed." We quote:

"Q When you did swerve to the right after passing this automobile that you have described, in what manner did he make that swerve? Was it a sudden swerve?

"A It was a sudden swerve, a sudden jerk to the right."

Plaintiff further testified that on the first occasion when he complained to the defendant about speed, the car was going between 75 and 80 miles an hour. After that incident, the defendant slowed down to 40 miles an hour while negotiating winding curves on the approach to Oswego. Plaintiff testified:

"Q * * * am I right now that you again complained of the speed when he was passing that car, when he said he would slow up when he passed it? Is that correct?

"A Just before we passed the car. It was on the first curve as you leave Oswego, that curve as you turn to the left, and I felt the rear tires slip, and that is when I made that second complaint, and that is when he said, 'As soon as I pass that car,' and that car was then ahead of us.

"Q And he started to pass the car there just before the accident? Is that correct?

"A Yes, he did pass a car.

"Q And while he was in the act of passing that

other car, another car came around and passed ahead of you? Is that correct?

"A He was ahead of the car all right.

"Q He was ahead of the car?

"A Yes. As I say, the other car was in a blind spot there. I would say the other car was ten or fifteen feet back of us actually, although you couldn't see him in the rear view mirror.

"Q Yes, I get you now. That was the car you were passing?

"A That was the car we were passing.

"Q He was about in the blind spot there, and then cars came along the bend in front of you? Is that right?

"A No. We were on the bend there, right on the bend, the second bend turning to the right. Then, there is a straight-of-way between another curve, a little stretch between two curves, and then there was a couple of cars that came around the curve, and then the one in back pulled out in the center lane in which we were traveling, and at that time Lyle reaved the car hard to the right. They were, I would say, three to five hundred feet up the road.

"Q In other words, you had passed this other car. That is, it was in the blind spot there in the car where you were sitting? Is that correct?

"A Yes.

"Q And then two cars came around in front of you, one on the outside lane and the other in the center lane? Is that correct?

"A No, that is not correct. When we came around the curve, they were both in the outside lane going toward Oswego, and the back one pulled out.

"Q The back one pulled out into the same lane of traffic you were in?

"A That is correct, and in the middle lane.

"Q And in the middle lane, and you were in the middle lane?

"A That is correct.

"Q And Lyle pulled the car sharply to the right? Is that correct?

"A That is correct."

There is evidence that the road was wet; that the defendant's tires were smooth, with a faint trace of tread on them. The investigator for the district attorney's office testifed that the defendant, on the day of the accident, stated that he had been driving at an estimated speed of 50 miles an hour, attempted to pass a car, and "due to the smoothness of his tires, his car went out of control and over the shoulder and down the bank, turning over several times." The same investigator testified to rubber skid marks 80 feet in length. A sketch prepared by Officer Miller located the skid marks as beginning in the middle lane of travel and extending diagonally for 80 feet to the easterly edge of the right-hand lane. From that point the car traveled 96 feet across a bank and down a declivity. The defendant himself testified that when he reached a point 20 feet ahead of the car which he was passing, he was going about 60 miles an hour. The defendant testified that when he saw the south bound car swing out into the middle lane, he jerked the wheel and in doing so, "flipped to the right", and he was on the shoulder, and then, "flipped to the left", and he was on the bank and was out of control. He also testified that when the emergency arose he first "hit the accelerator a lot", and then "applied the brakes."

■■ The evidence of the defendant's negligence is clear. In *Turner, Adm'r, v. McCready et al.*, 190 Or 28, 222 P2d 1010, this court reviewed substantially all of the Oregon cases involving charges of gross negligence. The extensive review of the authorities in that case was made for the specific purpose of avoiding, when possible, the necessity of similar studies in future cases.

After consideration of the facts in the cases in which substantial evidence of gross negligence was found to exist, in comparison with the facts in the cases in which the court had held that no evidence of gross negligence existed, we summarized as follows:

"In harmonizing, so far as possible, the actual rulings on the facts in cases from this jurisdiction, it seems clear that under some circumstances the facts may present a jury question on the issue of gross negligence, although there is no *direct* evidence of a reckless state of mind manifested by warning given and ignored. While undue speed, alone, or driving on wrong side of the road, alone, or knowledge of conditions rendering such driving extremely *hazardous*, alone, may not constitute gross negligence or reckless disregard, yet, a combination of these elements in a given case may present a jury question. The element of recklessness may, under some circumstances, be inferred from evidence of the driver's conduct in the light of conditions and of what he must have known. We accept, and will apply the general views as to the nature of gross negligence expressed in Rauch v. Stecklein; Ross v. Hayes; Callander and Stone v. Brown; and Baird v. Boyer, all supra. But, we also recognize that the decision in each case must depend upon the particular facts of that particular case. Herzog v. Mittleman, supra. The question briefly stated, is whether the operation of the automobile indicated a mind indifferent to the rights of others, or having those rash qualities exhibited by the foolhardy, or having an 'I don't care what happens' attitude. Baird v. Boyer, supra. However, this 'I don't care attitude' does not necessarily imply a willingness to cause a collision. If that were the test, no one but a would-be suicide could be held guilty of gross negligence, but it surely does imply a foolhardy willingness to incur great hazards."

Subsequent decisions have not changed the general rules above set forth.

■ Accepting the evidence most favorable to the plaintiff in the case at bar, we find that the defendant was driving at an excessive rate of speed, on a wet road, with smooth tires, after twice having been warned to slow down, once immediately preceding the accident. We have evidence that the defendant was either irritated or angry by the warning first given. The road on which he was driving was a three lane road which in and of itself constitutes notice of the necessity of especial care to avoid collision in the middle lane. The road curved at points both north and south of the point of the accident. The fact that the defendant earnestly strove to avoid a collision after having recklessly placed himself in a position of danger does not free him from responsibility for the conduct which produced the condition of danger. We are of the opinion that there was substantial evidence of gross negligence which was properly submitted to the jury.

The judgment is affirmed.