## STATE v. DAVID M. ROBERSON.

(Filed 13 October, 1954.)

**1. Automobiles § 18g (4)—**

While as a general rule, a person of ordinary intelligence, who has had an opportunity for observation, is competent to testify as to the rate of speed of a moving object, such as an automobile, where a motorist testifies he did not see the other car involved in the collision before the impact, his estimate of the speed of the other car is without probative value and is incompetent.

**2. Automobiles § 29b—**

In this prosecution under G.S. 20-140 there was no competent opinion evidence that defendant's car was traveling at excessive speed, and the physical facts at the scene of the collision *are held* insufficient, standing alone, to take the case to the jury on the charge of reckless driving, and defendant's motion to nonsuit should have been allowed.

**3. Negligence § 23—**

Culpable negligence in the law of crimes is something more than actionable negligence in the law of torts.

**4. Automobiles § 8g—**

The skidding of an automobile, without more, does not imply negligence.

APPEAL by defendant from *Carr, J.,* at July Term, 1954, of WASHINGTON.

Criminal prosecution begun in Recorder's Court of Washington County, and transferred to the Superior Court for trial, defendant having requested a jury trial, and in Superior Court a true bill of indictment was returned by the grand jury, charging that defendant "did drive a motor vehicle upon a public highway carelessly and heedlessly in willful and wanton disregard of the rights or safety of others or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property against the form of the statute," etc.

Defendant entered a plea of not guilty.

The record discloses that this prosecution grew out of a collision which occurred about 7 o'clock on the morning of 25 August, 1953, between a Chevrolet 2/4-ton pickup truck owned and operated by one D. O. Patrick, heading south on Highway #64 going toward the town of Roper, N. C., and a Chevrolet convertible automobile owned and operated by defendant in an easterly direction on a road by-passing the town of Roper and parallelling Highway #64.

The collision took place almost in the middle of the intersection. Patrick's truck was "just a little bit by the middle of the intersection."

It was moving from Roberson's left. As to whether construction on the by-pass was being carried on, the evidence is contradictory. There were no stop signs at either intersection. There was a sign at one end saying "Road under Construction." Other cars had been traveling the road while the work was going on.

And the highway patrolman, as witness for the State, testified: "It was not unusual for Mr. Roberson to be on it. It was not barricaded at that end, but it was at the other."

As to skid marks: The highway patrolman testified: "The skid marks . . . were mighty short . . . From the time he applied his brakes, that was 28 feet on a dirt road . . . from the point of collision."

As to speed of Roberson's car: Patrick, as witness for the State, testified: "I never even saw the Roberson car until it hit me . . . I had not more than got on the highway when he struck me." Then on being asked the question: "Do you have an opinion satisfactory to yourself as to how fast Mr. Roberson was driving?", the witness answered: "The way I think, around 65 miles per hour, from the way he drug his brakes and . . ." Thereupon, the court instructed the jury not to consider and to disregard that answer. But the witness continued: "Yes, I have an opinion satisfactory to myself as to how fast he was driving. In my opinion he was driving 65 miles per hour. . . . He hit the truck broadsided. It landed on side and then on the top . . . The chassis and the hood was torn all to pieces and the fenders and the glass broken all to pieces. The truck was driven 20 feet from the time it was hit until it landed by the impact of the Roberson car . . . It hit the truck, picked it off the ground, turned it over, struck on its side and then on its top."

Then, again quoting the witness Patrick: "He (Roberson) was traveling faster than he should ought to . . . Yes, I knew I was on the left right here. I went out without stopping to see if anybody was coming. No, I did not stop and neither did he . . . The way Mr. Roberson hit me and the way his tires drug on the road, I say I could tell he was going around 65 miles per hour. Yes, I was going forward when he hit me . . ."

The highway patrolman testified: "I investigated this accident . . . The skid marks were mighty short, but the impact, as Mr. Roberson said that day, was a pretty hard impact. I would say he was running about the speed limit. I could not say he was running over the speed limit which is 35 miles per hour there, but it had been a real solid blow, but judging from the shortness of the skid marks, I could not say definitely . . ." Then on cross-examination, the patrolman continued: "Yes, Roberson was driving about 35 miles per hour and that was the speed limit at that point. Yes, the skid marks were short. Yes, Mr. Patrick was to Mr. Roberson's left. There were no stop signs erected there at that intersection. At the end of the road Mr. Roberson went in there was no barri-

cade, just a sign saying 'Road under Construction.' Yes, there were other cars that had been using the road while work was going on. . . . Yes, it is a pretty blind intersection there, with weeds to cut off the view."

Motion of defendant at end of State's evidence for a directed verdict of not guilty was denied. Exception.

Defendant, as witness for himself, testified: "I live in Williamston . . . On August 25 I was on the way to Creswell . . . There were little patches of fog that morning. It was not a complete blackout of fog, but there seemed to be open holes in it, light places, then patches of fog when you could not see anything. I do not know whether that had . . . was the cause of this accident, for sure, or not. . . . When I got to the end of this by-pass here . . . Yes, the entrance in, there was not barricade up and there was a sign saying 'Road under Construction.' The tracks were very plain where other cars had been traveling there, so I turned and started through them. I do not know how fast I was going. I could not have been going very fast because I stopped down to where I had to change gears when I turned. Coming from Williamston I would have been on the right-hand side of the road. I had to make a left turn to cross the road, had to slow down and hold my hand out, to make the turn. I was only about 300 yards then to where we went together, so I could not have been driving very fast and could not have got up speed from almost a complete stop in that length of time. I saw Mr. Patrick before I hit him but it was too late to do anything about it, but I didn't see him time enough to know, but he admitted on the stand that he did not see me at all. He did not make any attempt to stop. I was not going as fast as 60 or 65 miles per hour. I could not have been going over 35 or 40 at the outside. Of course, I was not looking at the speedometer, but I could not have been going very fast. Mr. Patrick was on my left. No, I do not have an opinion exactly as to how fast Mr. Patrick was going, but I would say 45 miles per hour, something like that. I do not think he was exceeding the speed limit, but I believe he was running a little faster than I was. I struck his truck in the side and knocked it over and it stopped with the wheels up . . . The width of the road I was on was about the same width as the other road; it is wider than the other road. It has the right of way now. Yes, at that time it was under construction and just a dirt road. I knew the crossroad was a paved road."

Defendant renewed motion at end of his evidence for judgment as of nonsuit. Motion denied. Exception.

Verdict: Guilty as charged.

Judgment: Confinement in jail and assigned to work the roads, etc. Suspended on condition that defendant pay into office of Clerk of Superior Court of Washington County for the use of D. O. Patrick the sum of $250.00 on or before 1 October, 1954, and cost of action, that said sum

shall be applied by the said D. O. Patrick toward payment of any damage that he sustained in the collision between defendant's car and truck of said D. O. Patrick.

Defendant appealed therefrom, assigning error.

*Attorney-General McMullan, Assistant Attorney-General Bruton, and Gerald F. White, Member of Staff, for the State.*

*LeRoy Scott for defendant, appellant.*

WINBORNE, J.   The determinative assignment of error on this appeal is based upon defendant's exception to denial of his motion for judgment as of nonsuit.   The exception is well taken.

While it is a general rule of law, adopted in this State, that any person of ordinary intelligence, who has had an opportunity for observation, is competent to testify as to the rate of speed of a moving object, such as an automobile, *Hicks v. Love,* 201 N.C. 773, 161 S.E. 394; *Jones v. Bagwell,* 207 N.C. 378, 177 S.E. 170; *Tyndall v. Hines Co.,* 226 N.C. 620, 39 S.E. 2d 828; *Brafford v. Cook,* 232 N.C. 699, 62 S.E. 2d 327, one who did not see the moving object or automobile in motion is not competent to give an opinion as to its speed.   *Tyndall v. Hines Co., supra,* and cases cited. Also *Carruthers v. R. R.,* 232 N.C. 183, 59 S.E. 2d 782.

Testing the evidence offered upon the trial in Superior Court as shown in case on appeal, by this rule, it appears that the opinion evidence as to speed of defendant's automobile comes from witnesses who did not see his automobile before the collision.   The witness Patrick swore "I never even saw the Roberson car until it hit me."   And the highway patrolman came to the scene to investigate the collision.   Hence, neither Patrick nor the highway patrolman was a competent witness to testify as to the speed of defendant's car, and their testimony in this respect is without probative value, *Tyndall v. Hines, supra; Carruthers v. R. R., supra.*

In the *Carruthers case, supra,* each witness offered estimates of the speed of defendant's car based on the result of the impact—for which purpose it was held that each was not a competent witness.

Therefore, stripping the evidence of the State of the estimates of speed as given by these witnesses, there remains in the State's evidence no estimates of the speed of defendant's automobile.   And defendant in his testimony stated that he could not have been going over 35 or 40 miles per hour at the outside.

Hence the question arises as to whether or not the physical facts, the skidding of defendant's car and the result of the impact upon Patrick's truck, under the attendant circumstances, standing alone, are sufficient to take the case to the jury on the charge of reckless driving as defined by G.S. 20-140.   We hold that the answer should be "No."

This statute, G.S. 20-140, declares that "any person who drives any vehicle upon a highway carelessly and heedlessly in willful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property shall be guilty of reckless driving, and upon conviction shall be punished . . ."

The language of this statute constitutes culpable negligence. And culpable negligence in the law of crimes is something more than actionable negligence in the law of torts. Indeed, in the law of torts the mere fact of the skidding of an automobile is not of itself such evidence of negligence in the operation of an automobile as to render the owner liable for an injury in consequence thereof. Skidding itself does not imply negligence. *Mitchell v. Melts,* 220 N.C. 793, 18 S.E. 406; *Hoke v. Greyhound,* 227 N.C. 412, 42 S.E. 2d 593.

Moreover, it is not amiss to note (1) that the case on appeal discloses that Patrick has sued defendant in a civil action, and (2) that considerable space was given in the trial below to matters pertaining to civil issues. We think the controversy belongs in the forum of the civil courts.

Reversed.