STATE v. HAROLD JUNIOR HART.

(Filed 8 April, 1959.)

**1. Automobiles § 38—**

Testimony of a witness that when the car driven by defendant passed the car in which the witness was riding defendant's car was traveling 50 to 60 miles per hour, and that from the way in which the car "pulled on away from us" and the flash of the car's tail lights, observed almost to the moment of the accident, the car was traveling 70 to 80 miles per hour, is competent. the weight to be given the witness' estimate of speed being a matter for the jury.

**2. Automobiles § 59— Evidence held sufficient to support conviction of involuntary manslaughter.**

Evidence tending to show that defendant stated immediately before the trip in question that if the car would not make 115 miles per hour from that point to a certain curve, he would give the car to his companion, that defendant thereupon drove the car, with his companion as a passenger, and that the car turned over on the hard surface at the curve, resulting in the death of the passenger, that the State Highway Commission had erected a 35 mile per hour speed zone before the curve in question, together with testimony of a witness that the car was traveling 70 to 80 miles per hour just prior to the wreck, is held sufficient to be submitted to the jury in a prosecution for involuntary manslaughter, and further, the opinion testimony as to speed, if accepted by the jury, is alone sufficient to support the verdict.

APPEAL by defendant from *Gwyn, J.,* August 1958 Term of IREDELL.

Defendant was indicted for killing James Thomas Goode, Jr. The jury returned a verdict of guilty of involuntary manslaughter. Sentence was imposed and defendant appealed.

*Attorney General Seawell and Assistant Attorney General Bruton for the State.*

*McLaughlin & Battley for defendant, appellant.*

RODMAN, J.   The criminal conduct charged is the operation of an automobile at an excessive and unlawful speed, causing the vehicle to turn over, thereby killing Goode, who was an occupant with defendant.

Defendant was the owner and operator of the automobile. It was stipulated that death was caused by the wrecking of the automobile.

Defendant argues there was no credible evidence from which a jury could find the automobile was being operated at an unlawful rate of speed and because of the absence of such evidence, his motion to non-suit, his only assignment of error, should have been allowed.

To show unlawful speed and culpable negligence, the State offered

evidence from which the jury could find: The wreck occurred in a curve; the paved portion of the highway at that point is nineteen feet. Defendant was traveling east. The vehicle turned over in the paved portion of the highway, coming to rest sixteen feet west of the point where it turned over and headed in a westwardly direction. There were skid marks extending 177 feet west from the point where it turned over. The State Highway Commission had erected a 35 m.p.h. speed zone sign west of the point where the wreck occurred. Defendant and deceased had left a restaurant just before the wreck. At the restaurant defendant had boasted that the preceding night he had driven his car at a speed of 119 m.p.h. He told deceased if the car would not make 115 m.p.h. from there to the curve, he would turn the keys over to deceased and give him the car. Whereupon deceased said: "O.K., let's go." "(W)hen they left they left real fast and slid out just about sideways." The car passed the witness Kearns, who was traveling east at 30-35 m.p.h. He estimated defendant's speed at the moment of passing at 50-60 m.p.h. He did not observe defendant's car thereafter.

Witness Lawing, riding with Kearns, testified that defendant "passed us doing about 50 to 60 m.p.h. and he pulled on away from us. You could see his tail lights at certain points and then we seen the flash of his lights up in the air. I saw the car from the time it passed me till it reached the curve. In my own opinion I would say the car was going between 70 and 80. I base my opinion on the way he walked off and left us. He gradually pulled away from us and speeded up."

Defendant assumes that his conviction rests solely on the estimate by Lawing that he was going 70 to 80 m.p.h.; and based on that assumption, he asserts his motion to nonsuit should have been allowed because the testimony was lacking in probative value. Defendant cites *S. v. Roberson,* 240 N.C. 745, 83 S.E. 2d 798, and *Tyndall v. Hines Co.,* 226 N.C. 620, 39 S.E. 2d 828, as supporting his contention. The opinion as to speed given in those cases was predicated on facts other than an observation of the moving vehicle.

Here the vehicle passed Lawing at an estimated speed of 50-60 m.p.h. He continued to observe it and noted the increase in speed. Defendant did not by exception challenge its competency.

Defendant's conviction does not rest solely on the testimony of Lawing. That testimony was competent and sufficient if accepted by the jury to support the verdict. The weight to be given to Lawing's estimate of speed was a matter for the jury. *Lookabill v. Regan,* 247 N.C. 199, 100 S.E. 2d 521; *S. v. Becker,* 241 N.C. 321, 85 S.E. 2d 327;

DUDLEY *v.* DUDLEY.

*Harris v. Draper,* 233 N.C. 221, 63 S.E. 2d 209; *Tyndall v. Hines Co., supra; Jones v. Bagwell,* 207 N.C. 378, 177 S.E. 170.

No error.