Argued February 4, reversed April 15, 1959

# STATE OF OREGON *v.* WILCOX

337 P. 2d 797

*Robert J. McCrea,* Deputy District Attorney, Eugene, argued the cause for appellant. With him on

the briefs were Eugene C. Venn, District Attorney, and Roger N. Rook, Deputy District Attorney, both of Eugene.

*Kenneth A. Poole,* Eugene, argued the cause for respondent. On the brief was Donald F. Bach, Eugene.

Before McAllister, Chief Justice, and Perry, Sloan and O'Connell, Justices.

O'CONNELL, J.

This is an appeal by the state from an order sustaining the defendant's demurrer to an indictment. The state contends that the indictment effectively charges the crime of negligent homicide defined in ORS 163.091. The indictment reads as follows:

"The above named Eldon Raymond Wilcox is accused by the Grand Jury of the County of Lane, State of Oregon, by this Indictment, of the crime of Negligent Homicide committed as follows:

"The said Eldon Raymond Wilcox on the 10th day of November, 1957, in the County of Lane and State of Oregon, then and there being, and then and there being the driver of a certain motor vehicle, to-wit: a 1949 Cadillac bearing Oregon license number 8E 8234 upon a certain public highway, to-wit: Highway 58 in Lane County, Oregon, did then and there unlawfully drive said motor vehicle in a grossly negligent manner, to-wit: by then and there driving said vehicle carelessly and heedlessly in wilful and wanton disregard of the rights and safety of others and without due caution and circumspection and at a speed and in such a manner so as to endanger or be likely to endanger the person and property of others; and while so driving said motor vehicle did operate and drive said motor vehicle against, upon, and into the person and body of one Edward Glen Williams and did thereby in-

flict and cause to be inflicted certain mortal injuries, wounds and contusions upon the said Edward Glen Williams, who, as a direct and proximate result of said mortal injuries, wounds and contusions, did die in Lane County within one year thereafter and on the 13th day of November, 1957; contrary to the statute in such cases made and provided, and against the peace and dignity of the State of Oregon."

The demurrer was interposed upon the ground that the indictment did not conform with the requirements of ORS 132.530 and ORS 132.540 in that it contained two allegations which were in the alternative and charged two different crimes. It is asserted that the allegation that the defendant drove his motor vehicle "at a speed and in such a manner so as to endanger or be likely to endanger the person and property of others" describes alternatively two different degrees of danger attendant upon the defendant's act and that therefore the indictment could be construed as charging manslaughter or second degree murder if it were found that the defendant drove in such a manner so as to endanger another person or his property, or as charging manslaughter or negligent homicide if it were found that the defendant drove in such a manner that his conduct was *likely* to endanger another person or his property.

The state contends that it intended to charge only the crime of negligent homicide and that the indictment is sufficient to do so. The crime of negligent homicide is defined in ORS 163.091 as follows:

"When the death of any person ensues within one year as the proximate result of injuries caused by:

"(1) The driving of any motor vehicle or combination of motor vehicles in a grossly negligent manner    *    *    *."

It is significant to note that this section was amended by Oregon Laws 1957, Chapter 396, by adding the word "grossly" before the word "negligent" and thus requiring a greater degree of culpability to make out the crime defined.

Manslaughter is defined in ORS 163.040. The pertinent portion of the statute reads as follows:

"* * * * *

"(2) Any person who, in the commission of any unlawful act, or a lawful act without due caution or circumspection, involuntarily kills another, is guilty of manslaughter. The provisions of this subsection shall not apply to the killing of any person where the proximate cause of such killing is an act or omission defined as negligent homicide in ORS 163.091."

Since this section expressly excludes from the definition of manslaughter an act or omission defined as negligent homicide it is necessary to ascertain the scope of ORS 163.091, the negligent homicide statute, and to determine whether the indictment in this case describes a type of conduct which is not included within ORS 163.091 but goes beyond it so as to allege the crime of manslaughter or second degree murder.

The indictment contains essentially the same language as that set out in the first subsection of ORS 483.992, the reckless driving statute. The statute reads in part as follows:

"(1) Any person who drives any vehicle upon a highway carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any other person or property of another, is guilty of reckless driving and shall be punished: [providing the penalty]

\* \* \* \* \*

"(2) (b) If the death of any human being is proximately caused by the grossly negligent operation of any vehicle contrary to subsection (1) of this section or any of the sections listed in subsection (1), (2) and (3) of ORS 483.990, by any person while under the influence of intoxicating liquor, barbiturates or narcotic drugs, the operator of such vehicle shall be deemed guilty of manslaughter and, upon conviction, shall be punished as provided by the law relating to manslaughter."

It is the defendant's position that the language of the indictment describing his conduct in terms of the reckless driving statute charges him with at least four different types of misconduct: (1) simple negligence, (2) gross negligence, (3) wanton misconduct, and (4) intentional misconduct. It is urged that the word "wilful" in the indictment and in the reckless driving statute can be construed to mean intentional misconduct and the defendant would therefore be charged with second degree murder. The defendant argues that even if the words "wilful and wanton" describe less than intentional conduct they include more than gross negligence, relying upon *Cook v. Kinzua Pine Mills Co. et al.,* 207 Or 34, 293 P2d 717; and *Falls v. Mortensen,* 207 Or 130, 295 P2d 182 (1956).

In examining these contentions of the defendant it is necessary to find only that the indictment is direct and certain as to the crime charged (ORS 132.530) and that the act of omission charged is clearly and distinctly set forth in such a manner as to enable a person of common understanding to know what crime is intended and to enable the court to pronounce the proper judgment. ORS 132.540.

■ First the indictment informs the defendant that he is charged with the crime of "negligent homicide."

Although the use in an indictment of the name of a particular crime is not controlling of itself, *Ex parte Harrison,* 55 Ariz 347, 101 P2d 457 (1940), it is a proper factor to consider, for "the meaning is to be determined from the whole instrument  *  *  *" in determining whether the accusation made against the defendant has been set out with sufficient certainty to satisfy the requirements of ORS 132.530 and ORS 132.540. *State v. Jennings,* 131 Or 455, 461, 282 P 560, 562 (1929). Here the indictment goes on to charge the defendant with unlawfully driving a motor vehicle "in a grossly negligent manner" adopting the words of the negligent homicide statute. The nature of the defendant's grossly negligent conduct is then more specifically described by the language following the words "to-wit," an expression which is used "to call attention to a more particular specification of what has preceded." Webster's International Dictionary. Even if it is assumed that the words "wilful and wanton" may describe conduct which is more culpable than gross negligence, the initial designation of defendant's conduct as "grossly negligent" would clearly indicate the intent to describe only that type of willful and wanton conduct which does not exceed gross negligence.

But we do not feel that it is necessary to rest our interpretation of the indictment upon this ground alone. We are of the opinion that the language in subsection (1) of the reckless driving statute, ORS 483.992, is descriptive of grossly negligent conduct and nothing more nor less, and therefore the use of this language in the indictment charged only the crime of negligent homicide. Our conclusion develops out of the following considerations.

The defendant assumes that the words willful and wanton can mean more than gross negligence. There

is no doubt that he can find language in the cases to support his contention. In the many contexts in which the words "willful" and "wanton" are used in the adjudicated cases, either conjoined or separately, there is a profusion of definitions. As would be expected, the meaning attributed to these words is colored by the purpose for which they are used. Thus, they may have one meaning in a guest statute and another meaning in a statute defining a crime. The word "willful" is occasionally used to describe conduct exhibiting an intent to injure another, or it, either alone or together with the word "wanton," is sometimes used to describe conduct that shows less than an intent to injure another or to violate a law but an intent to do an act with such knowledge of the danger to others that there is great probability of serious harm. *Day v. Downey,* 256 Ala 587, 56 So2d 656 (1952); *Pyramid Musical Corp. v. Floral Park Bank,* 268 App Div 783, 48 NYS2d 866 (1944); *Ferguson v. Hurford,* 132 Colo 507, 290 P2d 229 (1955); *Wakefield v. Singletary,* 76 SD 417, 80 NW2d 84 (1956).

The idea that the terms "willful" and "wanton" do not require a finding that the actor intended to injure another is clearly expressed in ORS 161.010 which reads in part as follows:

"(1) 'Wilfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act or omission referred to, and does not require any intent to violate law, to injure another or to acquire any advantage."

\*   \*   \*   \*   \*

"(6) 'Wantonly,' when applied to the commission of an act, implies that the act was done with a purpose to injure or destroy without cause and without reference to any particular person."

The same idea is found in our own cases involving the meaning of the words "willful and wanton." See *Falls v. Mortensen,* supra, relying upon 2 Restatement of Torts, § 500 and Prosser on Torts, 2d ed, § 33, p 151. In *Falls v. Mortensen,* supra at p 139, willful and wanton conduct is described as misconduct "different *in kind and not merely in degree from negligence* ordinary or gross." In that case as well as in *Cook v. Kinzua Pine Mills Co.,* supra, the court stated that the distinctions between gross negligence on one hand and willful and wanton misconduct on the other is important in determining whether the doctrine of contributory negligence is available to the defendant. It was held that contributory negligence is not a defense if the defendant's conduct is willful or wanton, but the contrary is true if the defendant's conduct is no more than gross negligence. The court was concerned with the classification of conduct simply for the purpose of applying the doctrine of contributory negligence and it may have intended to say only that contributory negligence is a defense to gross negligence without the element of willfulness and wantonness, but that contributory negligence is not a defense to gross negligence of the willful and wanton type. There is no doubt that in some of our cases gross negligence is described in terms of willful and wanton conduct. Note, 33 OLR 216,221 (1954).

The court in the Cook and Falls cases did not attempt to appraise for all purposes the validity of a classification separating willful and wanton misconduct from other types of culpability. Consequently, we do not regard those cases as committing the court in a criminal case to a classification which separates willful and wanton conduct from gross negligence. Good reasons can be advanced for limiting the classi-

fication in all cases to three types of misconduct; i.e., (1) simple negligence, (2) gross negligence, and (3) intentional misconduct, as we think it is limited in the statutes which we are concerned with in the present case.

It is felt in some quarters that since willful and wanton misconduct has been used to describe an act of an unreasonable character *intentionally* done, the conduct is not inadvertent and should not, therefore, be placed in the same category as gross negligence which admittedly is a non-intentional type of conduct. But there is nothing in life or in logic which prevents us from regarding as inadvertent conduct any conduct short of an act done with the intent to do the particular harm. In fact, we admit that willful and wanton conduct is inadvertent when we define it as 2 Restatement, Torts 1293, § 500 does to include acts done in the face of a risk not known to the actor but, as Prosser puts it, "so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." Prosser on Torts, (2d ed), p 151.

It is not unreasonable to look upon willful and wanton conduct short of an intent to do a particular harm as an aggravated form of negligence. There would seem to be no harm in doing so and there is the promise that by reducing the categories of misconduct to the least possible number we would make this part of the law a little more understandable to the jury. The division of negligence into separate categories is admittedly illogical and impracticable. The lesson taught by that effort to attain certainty where certainty cannot exist should now prompt us to examine with care any proposal to fix another category of mis-

conduct in an area between intentional and unintentional conduct.

There is authority for grouping willful and wanton conduct with negligence. As Prosser has said, after discussing the distinctions between willful, wanton and reckless conduct: "In practice, such subtle distinctions have been ignored and 'wilful,' 'wanton,' and 'reckless' conduct have been grouped together as an aggravated form of negligence; differing in quality rather than in degree from ordinary lack of care." Prosser on Torts, (2d ed), p 151.

Whether we assimilate or treat separately gross negligence and willful and wanton conduct, there would seem to be no difference in the problems involved in instructing the jury or in applying the law where it is necessary to take account of the aggravated character of the alleged misconduct as for example, where punitive damages are claimed or where the defense of contributory negligence is attacked as in *Falls v. Mortensen,* supra.

Even though we regard *Falls v. Mortensen,* supra, as stating that willful and wanton conduct must be kept separate from negligent conduct not only for the purpose of determining whether contributory negligence is a defense but in the application of all principles of tort liability, that case is not controlling here. We are concerned here with the meaning of the words "willful and wanton" in the application of our criminal statutes and we must, therefore, look to these statutes for any light that they may cast upon the meaning of those words. We have already alluded to ORS 161.010 in which the words "wilful" and "wanton" are separately defined, but these definitions cannot help us in the present case because the indictment, cast in the language of the reckless driving statute, uses the

words "wilful and wanton" in conjunction and it is obvious that the definitions in ORS 161.010 could not apply because the separate words are there so defined that they are intithetical. ORS 161.010 provides that the words shall have the meaning stated in the section "unless the context requires otherwise." When willful and wanton are used together, the context requires us to look elsewhere for a meaning which will make the separate words compatible. We can find this meaning by a careful reading of ORS 483.992, our reckless driving statute, which we shall examine later.

Before doing so however, we wish to point out the consequences of accepting the classification of misconduct which the defendant's argument assumes. As we have already observed, there are Oregon cases which describe gross negligence in terms of willful and wanton misconduct. The defendant, relying upon *Cook v. Kinzua Pine Mills,* supra, and *Falls v. Mortensen,* supra, insists that willful and wanton misconduct is a type of conduct separate from gross negligence. Unless the earlier Oregon cases describing gross negligence in terms of willfulness and wantonness are regarded as overruled by the Cook and Falls cases, we have two types of willful and wanton misconduct, part of which is regarded as gross negligence and a part of which is conduct of greater culpability.

■■ If wilful and wanton conduct is treated as falling both inside and outside gross negligence, we have manufactured a classification which includes (1) simple negligence, (2) gross negligence less than wilful and wanton misconduct, (3) gross negligence of the willful and wanton type, (4) willful and wanton misconduct greater than gross negligence, and (5) intentional misconduct. We think that the addition of (4) in the classification above would serve only to add

further complexity to an already confused part of the law. We shall not attribute to the legislature an intent to frame the reckless driving statute or the negligent homicide statute with the above classification in mind. We are of the opinion that these two statutes were intended to deal only with grossly negligent conduct with or without a willful and wanton state of mind. Support for the position that the reckless driving statute, ORS 483.992, should be so construed is found in cases from other jurisdictions which have essentially the same type of statute. *State v. Sisneros,* 42 N M 500, 82 P2d 274 (1938); *State v. Roberson,* 240 N C 745, 83 SE2d 798 (1954); *State v. Tjaden,* — N D —, 69 NW2d 272 (1955); *Commonwealth v. Forrey,* 172 Pa Sup 65, 92 A2d 233 (1952); State v. Rossman, 64 S D 532, 268 NW 702 (1936).

■ That part of the reckless driving statute which reads "or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property" could be construed to describe simple negligence. *Neessen v. Armstrong,* 213 Iowa 378, 239 NW 57 (1931); *Barkley v. State,* 165 Tenn 309, 54 SW2d 944 (1932); *Kirk v. State,* 47 So2d 283 (Ala App 1950). However, we agree with those courts which regard the reckless driving statute as requiring more than ordinary negligence to constitute a violation. The statutory requirement that the conduct endanger or be likely to endanger any person or property indicates the intention to make the statute applicable only if the conduct was more culpable than that embraced in simple negligence. If we should so construe the reckless driving statute that it would be violated by ordinary negligent conduct we would be presented with an anomaly if death should result from such conduct. The act would be "unlawful"

under the reckless driving statute. Any person, who in the commission of an "unlawful act" involuntarily kills another is guilty of manslaughter. Yet simple negligence would not constitute negligent homicide under ORS 163.091. The fact that the legislature amended the negligent homicide statute so as to increase the degree of culpability from simple negligence to gross negligence clearly indicates the legislative intent to exclude the killing of a person as a result of driving a motor vehicle in a simply negligent manner. It follows that the statutes defining manslaughter, negligent homicide and reckless driving are not violated where the motor vehicle is operated in an ordinary negligent manner.

We can reach this conclusion through another method of construction of our statutes. Subsection (2) of ORS 483.992, the reckless driving statute, reads in part as follows: "If the death of any human being is proximately caused by the *grossly negligent* operation of any vehicle *contrary to subsection (1) of this section* * * *." [Emphasis supplied.] The reference in this subsection to the conduct in subsection (1) as "grossly negligent" conduct would seem to indicate that the legislature regarded the language in subsection (1) as descriptive of grossly negligent conduct. Further, it will be noted that subsection (1) defines the conduct described as "reckless driving." Reckless conduct is distinguished from ordinary negligence. *Falls v. Mortensen,* supra.

One further aid to construction is available to us. Subsection (2) (b) of ORS 483.992 provides in effect that reckless driving by a person while under the influence of liquor or drugs which results in killing another person constitutes manslaughter. Here, by specifying the special circumstances under which reckless

driving will constitute manslaughter the legislature has indicated its intent to treat conduct which is no more culpable than gross negligence as a crime less than manslaughter.

■ The defendant argues that the issue in this case is settled by *State v. Davis,* 207 Or 525, 296 P2d 240. The indictment in each case is in essentially the same language, alleging willful and wanton misconduct. However, *State v. Davis,* supra, was decided at the time the negligent homicide statute was phrased in terms of simple negligence. The court held that only simple negligence was carved out of the manslaughter statute and that since the indictment charged more than simple negligence it charged a crime greater than negligent homicide. But with the amendment of the negligent homicide statute requiring gross negligence something more was carved out of the manslaughter statute. Our interpretation of the statutes, as we have developed it above, leads us to the conclusion that the negligent homicide statute in carving out of the manslaughter statute the crime of homicide resulting from grossly negligent conduct in the operation of a motor vehicle, carved out gross negligence in all of its gradations from the lowest to the highest form of unintentional culpable conduct including willful and wanton conduct. Therefore, *State v. Davis* can have no application to the case at bar.

■ From an examination of the entire statutory scheme relating to involuntary homicide we are of the opinion that the legislature intended (1) to exclude from all criminal punishment the act of driving an automobile in cases of simple negligence; (2) that the reckless driving statute is violated only by acts of gross negligence which, however, may include willful and wanton misconduct as the term has been used by this

court in civil cases; (3) that the negligent homicide statute was intended to provide the exclusive method of punishing a person for killing another as a result of driving a motor vehicle in a grossly negligent manner except where there are circumstances in addition to the actor's gross negligence (such as those specified in ORS 483.992 (2) (b) ) which brings the conduct within a more serious crime.

■ Applying the foregoing analysis to the case at bar we hold that the indictment charges the crime of negligent homicide and no other offense. The demurrer should have been overruled.

The judgment is reversed.

SLOAN, J., dissenting.

The indictment should not be sustained. No one contends that it does not allege sufficiently culpable conduct to charge killing by grossly negligent driving. The only question is: Does it charge something more?

The issue is settled by *State v. Davis,* 207 Or 525, 296 P2d 240; *State v. Cram,* 176 Or 577, 160 P2d 283, 164 ALR 952. The indictment in the instant case is so identical to that in the Davis case that no distinction could be, or has been, attempted. The indictment in the Davis case was held to charge manslaughter. The majority ignores that such was the actual issue presented by and decided by the Davis case. Instead the majority seemingly seizes upon this opportunity to realign and expand the concept of gross negligence, already admitted to be synonymous with confusion. If the indictment is faulty it can be corrected. It is with the departmentalization of gross negligence into that which is ordinary gross negligence and that which is wilful and wanton gross negligence that I am concerned. Despite the protestations of the majority to the contrary,

a new area in the field of negligence has now been plowed.

It is acknowledged that some of the courts have used "gross," "wilful" and "wanton" as equivalent terms. Harper and James, Torts, 950, §§ 15, 16; Elliott, Degrees of Negligence, 6 So. Cal Law Rev 91. This is largely the result, however, of statutory use of the words. The use of such terms to describe inadvertent or negligent conduct has not been free from criticism. Prosser on Torts (2d ed) 151, § 33. Negligence, even though gross, is still inadvertence. The observation that gross negligence and ordinary negligence were "the same thing with the addition of a vituperative epithet; * * *" (*Wilson v. Brett* (1843), 11 M & W 113) is much quoted. However, since the legislature imposed upon bench and bar the burden to cope with gross negligence we should confine it to the most precise limits possible.

On the other hand wilful conduct denotes and is and should be advertent, intentional or quasi-intentional. Professor Prosser cites *Kelly v. Malott,* 135 F 74, wherein it is said: "Negligence and wilfulness are as unmixable as oil and water. 'Wilful negligence' is as self-contradictory as 'guilty innocence.'" The conclusion can be reached that the greatest confusion that exists with reference to the guest cases has been with regard to those statutes or decisions which have attempted to apply "gross," "wanton" and "wilful" as equivalent terms. The more sound historical concept differentiates negligent and wilful conduct. 1 Thompson, Negligence 21, § 20; Prosser on Torts, supra; Elliott, Degrees of Negligence, supra. It is the attempt to mix the oil and the water that appears to create much of the confusion.

This court has previously flirted with this premise.

*Monner v. Starker,* 147 Or 118, 31 P2d 1109; *Smith v. Williams,* 180 Or 626, 178 P2d 710, 173 ALR 1220. Later in *Rogers, Adm'r. v. So. Pac. Co. et al.,* 190 Or 643, 649, 277 P2d 979, gross negligence was said to be "nothing more nor less than great negligence." In *Falls v. Mortensen,* 207 Or 130, 146, 295 P2d 182, the court, by Mr. Justice BRAND, cites the Rogers case as a return to a more direct definition that this court originally had applied to the guest statute. A portion of the opinion in that case is worthy of careful analysis (207 Or at p 145):

"In Turner v. McCready, 190 Or 28, 222 P2d 1010, recognizing the difficulty involved in attempting to give a definition appropriate for all cases, we resorted to an analysis of the specific facts in a long array of our earlier decisions, in an attempt by inclusion and exclusion, to find a guide for future decisions concerning gross negligence. See also, Johnson v. Leach, 197 Or 430, 253 P2d 642. The principles announced and the analysis made may serve to guide the trial judge and this court in determining whether there is or was sufficient evidence to require submission of gross negligence to the jury, but it is impossible to communicate the results of such analysis to a jury in the form of instructions. These considerations have inclined this court in its more recent decisions to the view that after the trial judge has considered the law and the facts, and has concluded that the issue of gross negligence is one for the jury, he would do well to instruct in the simplest possible language concerning the nature of gross negligence. Accordingly, in Rogers, Adm'r v. So. Pac. Co. et al, 190 Or 643, 649, 277 P2d 979, we said, 'In its simplest definition gross negligence means nothing more nor less than great negligence.' Again, we spoke of negligence of 'such an aggravated character as to constitute gross negligence.'

"In Weber, Adm'r v. Te Selle, Adm'r, 191 Or 85, 87, 228 P2d 769, we said:

" 'In many decisions of this court brought under such statute, we have attempted to define gross negligence inasmuch as the statute itself contains no definition of what constitutes gross negligence in the operation of an automobile. No standard definition applicable to all cases has been or can be discovered. In the recent case of Rogers, Administrator of the Estate of Betsey Lou Rogers v. Southern Pacific Co. et al, and McKenzie, decided on February 21, 1951, we said that gross negligence "means nothing more nor less than great negligence." '

"While greater detail may occasionally be required in instructions, we think the problem will be greatly clarified if as a rule the jury is instructed in accordance with the simple definition to which we seem to have returned. Only so will it be possible to make clear to the jury the essential difference between gross negligence and wanton misconduct. On one occasion we cited with apparent approval a definition of gross negligence as including wanton misconduct. Gill v. Selling et al, 125 Or 587, 262 P 812. This we must reject. The distinction between gross negligence and wanton misconduct has been repeatedly recognized."

The majority now repels that direct and more simple limitation of gross negligence which is so much to be desired. The rule now adopted will require the trial courts to explain gross negligence in terms running from something slightly more than ordinary negligence—perhaps the combination of two or more acts of simple negligence (*Turner, Adm'r. v. McCready,* supra, at Or p 54)—to and including wilful and wanton conduct. The majority does not say under what circumstances or when the court shall explain wilful and wanton conduct to the jury, with its attendant issues of punitive damages and the defense of contributory negligence. Will it be in every case or must the court

decide whether or not the evidence requires it? We cannot say that gross negligence and wilful and wanton are now synonymous and the latter term abolished. How else will the court define the conduct which will justify punitive damages? Centuries of sound common-law identification and thinking will not be so readily dispelled. Certainly, it could not be said that the term "great negligence" will suffice to explain this entire spectrum to the jury. I am of the firm opinion that the reasoning adopted by the court in *Falls v. Mortensen* should be preserved and that the term "gross" negligence is only capable of some degree of logical application when limited with the greatest preciseness possible.

The majority attempts to mollify the effect of its holding by applying the announced doctrine to the criminal statutes. It leaves undecided the application of this opinion to civil cases. The implication that it may be applied to guest cases should not be permitted. The uneasy certainty that now prevails in the trial of these cases will now be limited to how well the trial court can divine the will of this court. The admonition of Justice BRAND, above, that the detailed analysis of *Turner v. McCready* cannot be submitted to the jury is pertinent. The majority opinion will stimulate animated discussion between court and counsel in chambers. It will also stimulate the judicial hackle when the court attempts to explain it to the jury. For the reasons stated I would affirm the trial court.